688 N.E.2d 1311 (1997)
In re the Matter of B.L., a child alleged to be a delinquent, Appellant-Defendant,
v.
STATE of Indiana, Appellee-Plaintiff.
No. 84A01-9703-JV-97.
Court of Appeals of Indiana.
December 12, 1997.
*1312 Robert D. Hepburn, Terre Haute, for Appellant-Defendant.
Jeffrey A. Modisett, Attorney General, John B. Herriman, Deputy Attorney General, Indianapolis, for Appellee-Plaintiff.

OPINION
NAJAM, Judge.

FACTS AND PROCEDURAL HISTORY
Based on her truancy from school, B.L. was adjudicated a delinquent on December 28, 1995. The trial court ordered her to serve one year of strict formal probation, and specifically ordered her to attend school. On February 29, 1996, the State filed a Petition for Modification of Dispositional Decree which alleged that B.L. had violated the conditions of her probation by her expulsion from school. The court ordered B.L. to serve fifteen days in detention, to attend summer school and to participate in a counseling program.
B.L. continued to have truancy problems and failed to complete summer school. Consequently, the State filed a second Petition for Modification of Dispositional Decree which requested the court to commit B.L. to the Indiana Girls' School for 90 days for alleged non-compliance with the court's previous order. After a hearing on December 4, 1996, the court extended B.L.'s probation by six months and ordered that she be arrested and detained if she were tardy to or absent from school. The court also ordered that she be committed to the Indiana Girls' School if she were expelled from school.
Two days later, on December 6, 1996, B.L. failed to attend her fifth-period class. Dean of Students Jackie Lower located B.L. in a school bathroom having a conversation with another student. B.L. was later "written up" for her failure to attend the class. The court then issued a bench warrant for B.L.'s arrest on a charge of contempt of court. B.L. was arrested on December 9th and detained at the Vigo County Juvenile Detention Center. After a hearing on December 11th, the court held B.L. in contempt of court for her failure to attend school as ordered by the court and then committed her to a 90-day term at the Indiana Girls' School. B.L. now brings this appeal.
We reverse.

ISSUE[1]
B.L. presents two issues for our review which we consolidate and restate as whether a court may use its inherent contempt power to incarcerate a repeat status offender in lieu of the procedure established by Indiana Code § 31-6-7-16(f).

DISCUSSION AND DECISION
B.L. argues that a juvenile court does not have the authority to hold a repeat status offender in contempt of court and order incarceration for that contempt. Instead, B.L. insists that a court must follow the procedures established by Indiana Code § 31-6-7-16. The State counters that Section 16 should not be interpreted so as to abrogate a court's inherent contempt power. Accordingly, the State maintains that the court did not exceed its authority when it held B.L. in contempt and committed her to the Indiana Girls' School.
The Indiana General Assembly has enacted various statutes which codify the inherent power of our courts to hold a person in *1313 contempt.[2] Indiana Code § 31-6-7-15 provides that a juvenile court may punish a "person" for contempt of court under Indiana Code §§ 34-4-7, 34-4-8 and 34-4-9. Chapter 7 establishes in relevant part that:
Every person who shall be guilty of any wilful disobedience of any process, or any order lawfully issued by any court of record, or by the proper officer thereof, under the authority of law, or the direction of such court, after the same shall have been served upon him shall be guilty of an indirect contempt of the court from which such process or order shall have issued.
IND.CODE § 34-4-7-3. Indiana Code § 34-4-7-8 establishes the procedures which a court must follow to hold a person in indirect contempt. The question remains whether these statutes authorize a juvenile court to hold a "repeat status offender" in contempt of court and to impose incarceration as an appropriate punishment.
Under the Indiana juvenile code, a child commits a delinquent act if, before attaining the age of 18, the child commits an act that would be an offense if committed by an adult. IND.CODE § 31-6-4-1(a)(1). The juvenile code also enumerates five so-called "status offenses"[3] that constitute delinquent acts for which a child may be adjudicated a delinquent. IND.CODE §§ 31-6-4-1(a)(2)-(6); (b)(2). The code states that a status offender may not be committed to the Indiana Department of Correction as an initial disposition. IND.CODE § 31-6-4-6.5(a). Rather, incarceration is limited to children who have been adjudicated delinquent for the commission of an act that would be an offense if committed by an adult and also to certain classes of repeat status offenders. IND.CODE §§ 31-6-4-6.5(b) and 31-6-7-16(c),(f).
Although the juvenile code allows for the incarceration of certain classes of delinquents, Indiana cases are in conflict as to whether repeat status offenders may be incarcerated for criminal contempt. In W.M. v. State, 437 N.E.2d 1028, 1033 (Ind.Ct.App. 1982), this court held that a juvenile court may not use its contempt power, codified by Indiana Code § 31-6-7-15, to incarcerate a repeat status offender. Rather, the court concluded that Section 15 merely authorizes the court to hold in contempt adults over whom juvenile courts exercise jurisdiction, e.g., a child's parents. Id. The court explained that:
[Indiana Code] § 31-6-7-15 should not be used to accomplish the goal that the juvenile court in the instant case attempted. It is meant to allow the juvenile courts as a means of keeping order in their courtrooms and grants them jurisdiction over adults in some circumstances. In light of the statutory prohibition of incarcerating juveniles whose acts are not crimes for adults, [Indiana Code § ] XX-X-X-XX cannot be used to incarcerate them when the underlying act is a status offense. To find otherwise would place sections of the Juvenile Code in conflict with each other....
Juvenile courts cannot be permitted to accomplish indirectly that which they could not accomplish directly.
Id. at 1033-34 (emphasis added). However, in T.T. v. State, 439 N.E.2d 655, 657 (Ind.Ct. App.1982), another panel of this court stated in dicta[4] that Indiana Code § 31-6-7-15 grants juvenile courts the authority to hold in contempt a child who "wilfully disobeys a lawful court order."
In 1985, the legislature amended Indiana Code § 31-6-7-16, which governs modification *1314 of juvenile orders, to include the following subsection:
(f) if:
(1) a child fails to comply with the compulsory school attendance law (IC 20-8.1-3) as part of a court order with respect to a delinquent act under IC 31-6-4-1(a)(3);

(2) the child received a written warning of the consequences of a violation of the court order;

(3) the issuance of the warning was reflected in the records of the hearing;
(4) the child is not held in a juvenile detention facility for more than twenty-four (24) hours (excluding Saturdays, Sundays, and legal holidays) before the hearing at which it is determined that the child violated that part of the order concerning the child's school attendance; and
(5) the child's mental and physical condition may be endangered if the child is not placed in a secure facility;
the juvenile court may modify its disposition order with respect to the delinquent act and place the child in a public or private facility for children under subsection (d).
(emphasis added).[5] Similarly, Indiana Code § 31-6-7-16(c) (added by P.L. 289-1983, Sec. 3) authorizes incarceration for repeat runawaysstatus offenders under Indiana Code § 31-6-4-1(a)(3). See n. 2, supra. In light of those amendments, B.L. contends that a juvenile court may only incarcerate a repeat truant if it follows the procedure under Indiana Code § 31-6-7-16(f) and that the court cannot use its inherent contempt power as an alternative. The State counters that the legislature may not abrogate or alienate a juvenile court's inherent contempt power and, thus, that this court is precluded from interpreting the juvenile code in a manner inconsistent with the court's authority. We disagree with the State's position.
While Indiana Code § 31-6-7-16 does not specifically use the word "contempt," it operates as a contempt statute in that it grants a juvenile court authority to incarcerate a delinquent for wilful disobedience of a court order. Thus, we will analyze the statute as we would any statute which purports to limit a court's contempt power. We acknowledge that a court's contempt power should not be diminished by the legislature. Ray v. State, 186 Ind. 396, 404-05, 114 N.E. 866, 869 (1917) ("[T]he right to punish for contempt is inherent in every court."); State v. Heltzel, 526 N.E.2d 1229, 1230 (Ind.Ct. App.1988) (court's inherent contempt power "is purely [a] judicial power and is not the creature of legislation and is inalienable and indestructible."). However, "it is well settled in this State that the legislature may reasonably regulate the exercise of the [contempt] power and prescribe the rules of practice and procedure in such cases." Rucker v. State, 170 Ind. 635, 638, 85 N.E. 356, 358 (1908). Accordingly, the legislature has enacted, and we have accepted as binding, rules governing the use of both direct and indirect contempt. See e.g., IND.CODE §§ 34-4-7-7 through 34-4-7-9; see also In re Marriage of Neiswinger, 477 N.E.2d 257, 259 (Ind.1985) (noncompliance with statutory procedures for contempt violates due process); Macon v. State, 629 N.E.2d 883, 886 (Ind.Ct.App.1994).
Without diminishing the importance of a court's inherent contempt power, we reaffirm our statement in W.M. that "[j]uvenile courts cannot be permitted to accomplish indirectly that which they could not accomplish directly." W.M., 437 N.E.2d at 1033-34. Since our decisions in W.M. and T.T., the legislature has specified the procedure that a juvenile *1315 court must follow in order to incarcerate a repeat truant. That procedure does not abrogate the court's authority but merely promotes the state's primary interest in the rehabilitation, rather than the punishment, of juvenile delinquents. The purpose behind the amendments to Indiana Code § 31-6-7-16 would be obviated if we were to allow a court to incarcerate a status offender for contempt based on delinquency that is otherwise not punishable by incarceration.
In the present case, the court informed B.L. in its December 4, 1996, order that she would be held in the Vigo County Juvenile Detention Center if she were truant from or tardy to any class and, further, that she would be committed to the Indiana Girls' School if she were expelled from school. We do not question the court's finding that:
[S]ervices which have been offered to the child in an effort to curtail her delinquent and incorrigible behavior have been ineffective and that it would be in the best interest of the minor child to be sentenced to the Indiana Girls' School for a period of 90 days.
However, the court did not follow the terms of its own order. B.L. had not been expelled from school prior to her commitment. Thus, the court did not provide B.L. with a written warning as required by Indiana Code § 31-6-7-16(f)(2). The record also indicates that B.L. was detained for more than twenty-four hours in the Vigo County Juvenile Detention Center before the modification hearing, in violation of Indiana Code § 31-6-7-16(f)(4). As such, we hold on these facts that the court's contempt order was contrary to law.

CONCLUSION
In sum, we hold that a juvenile court may not use its inherent contempt power to incarcerate a status offender for the wilful violation of a court order but must follow the procedures established by Indiana Code § 31-6-7-16 when it modifies a dispositional decree and orders the repeat status offender's commitment.[6] Because the court in the present case did not follow those procedures with respect to B.L., we reverse the court's order of contempt.
Reversed.
ROBERTSON and GARRARD, JJ., concur.
NOTES
[1] The State argues that the issue presented in this case is moot because B.L. has served her term and has been released. However, because the issue will likely arise again but will evade appellate review, we choose to address it. See N.J.R. v. State, 439 N.E.2d 725, 726 (Ind.Ct.App. 1982).
[2] Criminal contempt can be either direct or indirect and may be punishable by fine or imprisonment. See 6 I.L.E. Contempt §§ 4, 8 (1958).
[3] Under Indiana Code § 31-6-4-1(a), a status offender is one who:

(2) Leaves home without reasonable cause and without permission of the parent, guardian, or custodian, who requests the child's return;
(3) violates the compulsory school attendance law (IC 20-8.1-3);
(4) habitually disobeys the reasonable and lawful commands of the child's parent, guardian or custodian;
(5) commits a curfew violation; or
(6) violates IC 7.1-5-7 (concerning minors and alcoholic beverages).
[4] T.T. specifically addressed, and answered in the negative, whether criminal contempt is an act for which a juvenile may be adjudicated a delinquent. T.T. at 657.
[5] Contrary to the State's assertion, a juvenile court may modify a decree without a motion from the State. See Brief of Appellee at 4. Indiana Code § 31-6-7-16(a) provides in relevant part that a juvenile court may modify any dispositional decree:

(1) upon its own motion;
(2) upon the motion of the child, the child's parent, guardian, custodian, or guardian ad litem, the probation officer, the caseworker, the prosecutor, or the attorney of the county office of family and children;
(3) upon the motion of any person providing services to the child or to child's parent, guardian, or custodian under a decree of the court.
[6] Because Indiana Code § 31-6-7-16 was only amended to allow for the incarceration of repeat runaways and truants, it follows from our opinion that a juvenile court is wholly without authority to incarcerate delinquents adjudicated as status offenders under Indiana Code § 31-6-4-1(a)(4) through (a)(6). See n.2, supra.