Similarly, in *Harris v. State*, 861 N.E.2d 1182, 1188–1189 (Ind.2007), the defendant was charged with two counts of sexual misconduct. The Indiana Supreme Court concluded that the two crimes were a single episode of criminal conduct where the crimes were committed in the same bed though with two different victims only a few minutes apart. 861 N.E.2d at 1188–1189. The court noted "[t]wo acts of sexual misconduct which occurred five minutes apart in the same bed and based on the same reason—the girls' need for a place to stay for the night—are 'a connected series of offenses that are closely connected in time, place, and circumstance.'" *Id.*

**K.L.N., Appellant–Respondent,**

v.

**STATE of Indiana, Appellee–Petitioner.**

No. 71A03–0708–JV–411.

Court of Appeals of Indiana.

Feb. 19, 2008.

**40**

Mark F. James, Anderson, Agostino & Keller, PC, South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

BAKER, Chief Judge.

K.L.N., a juvenile, was adjudicated delinquent and confined to a secure facility for 120 days. As a result of K.L.N.'s unwillingness to follow the rules of the facility, the juvenile court modified the terms of his dispositional decree to include an order that K.L.N. follow those rules. After K.L.N. amassed three new incident reports, the probation department filed a rule to show cause, resulting in the court finding K.L.N. in civil contempt of court and imposing an additional term of confinement for the contempt finding. Although the juvenile court informed K.L.N. that for every day of good behavior on his original confinement one day would be subtracted from the contempt confinement, there was no way in which K.L.N. could have immediately purged himself of the contempt finding. Moreover, there is no statutory authority for the course of action taken by the juvenile court herein. Thus, we conclude that the juvenile court erred by holding K.L.N. in contempt and lengthening his term of confinement.

Appellant-respondent K.L.N. appeals the juvenile court's order finding him in indirect civil contempt for failing to obey the rules of the facility to which he was committed for 120 days and adding 77 days to his term of detention in the facility. Finding that the juvenile court did not have authority to take these actions, we reverse.

*FACTS*

On May 17, 2007, eighteen-year-old K.L.N. pleaded guilty to committing an act that would have been class B felony burglary had it been committed by an adult. Following a dispositional hearing, the juvenile court placed K.L.N. on probation subject to a number of conditions, including a 120–day commitment to the St. Joseph County Juvenile Justice Center (the Center). K.L.N. began serving the commitment on May 17, 2007.

On June 7, 2007, the trial court held an informational hearing during which K.L.N.'s probation officer testified that

since the commitment had begun on May 17, K.L.N. had accumulated six incident reports for disorderly and disrespectful behavior, use of profanity, and failure to follow staff instructions. At the hearing, the court stated that "it's very clear that it's assumed that he should be obeying the rules in detention...." June 7 Tr. p. 3. K.L.N.'s attorney explained that K.L.N. had faced consequences for his poor behavior, including being on room segregation and losing privileges such as using the phone and seeing visitors, such as his mother. *Id.* at 4–5. Notwithstanding the juvenile court's comment that "the Court should not be probably micro-managing what goes on in detention," *id.* at 7, the court, on its own motion, modified the terms of K.L.N.'s dispositional order to require K.L.N. to obey all Center rules and the instructions of Center staff. The court then cautioned K.L.N. that if he did not follow the rules, "then the probation department can possibly go through the hoops, go[ ] through the right process and file contempt proceedings. What result with those contempt proceedings, I'm not even going to begin to imagine." *Id.*

On June 14, 2007, the probation department filed a rule to show cause why K.L.N. should not be held in contempt of court for failing to obey Center rules, informing the court that in the week that had elapsed since the June 7 hearing, K.L.N. had amassed three new incident reports for destruction of property, disorderly conduct, failure to follow staff instructions, and being disrespectful to staff. The juvenile court held a hearing on June 29, 2007, at which K.L.N.'s attorney made the following argument:

If an adult goes to jail in a criminal case to the Department of Correction[ ] and is serving their time and they don't follow the rules, they're not subject to contempt. They don't get credit time. They get punished in the DOC. I know this is the juvenile system, but it is again, he is serving his sentence in a secure facility. He's been on room restriction. He's lost privileges. He's had no phone calls. He's suffered the consequences of his actions. If he commits an act that is criminal in nature the prosecutor's office can review it.

June 29 Tr. p. 6. After determining that 77 days remained of K.L.N.'s commitment to the Center, the juvenile court found K.L.N. in indirect civil contempt of court and ordered that he serve a 77–day consecutive period of confinement for the contempt. It also ordered, however, that for every day of K.L.N.'s original confinement on which he behaved well and followed the rules, one day would be subtracted from the contempt detention. Thus, according to the court, "[w]hen I sentence you for contempt to coerce [good behavior], I have to give [K.L.N.] the key to the jailhouse door, so to speak, and I'm doing that.... My hope, my intent is you'll never serve day one, but you hold the key to whether you serve day one." *Id.* at 13. K.L.N. now appeals.[1]

### DISCUSSION AND DECISION

Indiana Code section 31–32–14–1 provides that the juvenile court may punish a person for contempt of court. Here, the juvenile court found K.L.N. to be in indirect civil contempt of court, meaning

1. On October 5, 2007, K.L.N. was released from commitment and probation and his case was closed. Thus, this case is moot. Although we generally dismiss cases that are deemed moot, such cases may be decided on their merits when, as here, they involve questions of great public interest that are likely to recur or where the rights of an individual are involved. *Golub v. Giles*, 814 N.E.2d 1034, 1036 n. 1 (Ind.Ct.App.2004). Thus, we choose to address the merits of this case.

that he had violated a court order and that his actions had taken place outside of court and as a result, the court had no personal knowledge of his behavior. *Jones v. State*, 847 N.E.2d 190, 199 (Ind.Ct.App.2006), *trans. denied.* A penalty imposed by a court for an act of civil contempt must be coercive or remedial, rather than punitive, in nature. *Id.* A contempt order that does not offer an opportunity for the recalcitrant party to purge himself of the contempt may not be imposed in a civil contempt proceeding. *Marks v. Tolliver*, 839 N.E.2d 703, 707 (Ind.Ct.App.2005).

Here, the juvenile court imposed a penalty of seventy-seven days confinement for K.L.N.'s contempt. There were seventy-seven days remaining of K.L.N.'s original confinement with the Center, and the juvenile court ordered that for every day of K.L.N.'s detention during which he behaved well and followed the Center rules, one day of the contempt confinement would be subtracted. The State argues that in so doing, the juvenile court enabled K.L.N. to purge himself of the contempt finding and avoid the penalty.

Although this appears to be a case of first impression in Indiana, we find guidance from language contained in an opinion of a sister court that confronted a similar issue. In *In re J.L.*, the juvenile had amassed an unacceptable number of excused absences from school. 140 Wash. App. 438, 166 P.3d 776, 778 (2007). The juvenile court ordered her to attend school and warned her that a violation of the order could result in a finding of contempt and imposition of up to seven days of detention for each violation. Subsequently, J.L. violated the order and was found in contempt on three separate occasions. The first time, the juvenile court ordered that J.L. perform community service and serve four days of detention, but it suspended the detention upon the explicit con-

dition that J.L. comply with the order. The second time, having failed to attend school or perform community service, the juvenile court ordered her to serve two of the four suspended days of service, which it allowed her to serve on detention work crew, and converted the community service to two days of secure detention, which it also allowed her to serve on work crew and stated she could avoid serving those two days by providing proof that she had completed the community service. After a third contempt finding following J.L.'s failures to attend school, complete community service, and serve the four days on work crew, the juvenile court ordered J.L. to serve two days of secured detention. *Id.* at 778–79.

On appeal, the court considered the nature of the sanction. Although the State argued that the juvenile court's orders were remedial—designed to remedy her failures to attend school and comply with court orders—the appellate court disagreed:

> Remedial sanctions coerce performance of an act that is within the person's immediate power to perform. Punitive sanctions punish the person's failure to perform an act in the past. A conditional sanction is remedial if the contemnor has the ability to purge the contempt and avoid sanction by immediately complying with a condition. A contempt sanction involving detention is coercive and remedial rather than punitive so long as the contemnor has the *immediate* opportunity to purge. If there is no opportunity to purge, the detention is punitive rather than remedial.

In [*In re M.B.*, 101 Wash.App. 425, 3 P.3d 780 (2000)], Division One of this court dealt with the issue of effective sanctions in the context of juvenile truancy.... The *M.B.* court acknowledged that a truant child could never fully

comply with the order to attend school by "going to school yesterday." 101 Wash.App. at 448, 3 P.3d 780. Nevertheless it pragmatically explained that the juvenile court's powers should not be limited to only accepting a juvenile's promise to attend school:

> "A contemnor's promise of compliance is the first step. But where that promise is demonstrably unreliable, the court can insist on more than mere words of promise as a means of purging contempt. To conclude otherwise would render the statutes unenforceable and reduce the court to the level of beggar.
>
> "The challenge lies in determining how courts can exercise their discretion to fashion an appropriate purge condition such that the court is assured of the contemnor's future compliance while also ensuring that the sanction is remedial."

*M.B.*, 101 Wash.App. at 448–49, 3 P.3d 780. Thus, the *M.B.* court noted that the juvenile court must be entitled to fashion an appropriate purge condition that will ensure the juvenile's future compliance with its order while keeping the sanction remedial. Any condition that would satisfy the court of the juvenile's future compliance is permitted so long as the juvenile court "establishes a meaningful purge condition that serves remedial aims, can be fulfilled by the child, and is reasonably related to the cause or nature of the contempt. Upon performance of the condition, the child must be released." *M.B.*, 101 Wash. App. at 451, 3 P.3d 780. The *M.B.* court gave an example of a possible condition: ordering the juvenile to write a substantial paper with a subject matter reasonably related to the nature and cause of the contempt. 101 Wash.App. at 458–60, 3 P.3d 780.

But here there was no such purge condition. Instead, on three different occasions, J.L. violated the court's order that she attend school and the juvenile court imposed detention. It suspended the detention days on conditions, but J.L. could not immediately satisfy those conditions and purge her detention jeopardy. During the first contempt hearing, the juvenile court told J.L. that if she succeeded in complying with the order by attending school, the four days of secure detention would "fade away." While it no doubt intended to create an opportunity for J.L. to remedy her failure to attend school, the court actually imposed a determinate sentence and suspended it on conditions. This is a criminal sentence, not a remedial civil penalty. J.L. did not comply with the order and, at the second contempt hearing, the juvenile court ordered J.L. to serve her detention sentence on the work crew. But this sentence is nonetheless a deprivation of liberty.

*Id.* at 780–81 (footnote and some internal citations omitted) (emphasis in original). Ultimately, the court held that

> [t]o be valid, a purge condition must be within the contemnor's capacity to complete at the time the sanction is imposed. For example, in a child support situation, the contemnor will not be incarcerated if back child support is paid and must be released immediately upon payment of back child support.... Here, even under the juvenile court's initial contempt order, J.L. could not immediately satisfy the conditions and remained in jeopardy of incarceration.

*Id.* at 781. Because the juvenile court had failed to provide a genuine means for J.L. to purge the contempt, the sanction was punitive, imposed, and suspended on conditions and, thus, criminal. J.L.'s detention was, therefore, unlawful. *Id.*

Here, similarly, the "purge condition" put in place by the juvenile court—follow the rules for the remainder of the detention—was not within K.L.N.'s capacity to complete at the time the sanction was imposed. Instead, it required him to continue to behave in a certain way for seventy-seven days—far from an immediate solution. Indeed, as K.L.N.'s attorney explained to the juvenile court, under the terms of the modified dispositional decree, K.L.N. could have been found in contempt of court every time he received a new incident report. Thus, not only did every new "bad" day leave one day of the contempt detention remaining, it also left K.L.N. vulnerable to a *new* contempt finding. Under these circumstances, we can only conclude that this penalty is criminal in nature. Given that K.L.N. was found to be in *civil* contempt of court, a criminal, punitive sanction is unlawful. *See Hancz v. City of South Bend,* 691 N.E.2d 1322, 1325 n. 3 (Ind.Ct.App.1998) (finding that whereas "[p]roceedings for civil contempt should be filed in the civil case out of which it arises," "[a] charge of criminal contempt should be prosecuted by the State against the defendant, in an independent action, and should charge that the acts have been done or omitted to be done with the intent to defy the authority of the court"); *see also B.L. v. State,* 688 N.E.2d 1311, 1314 (Ind.Ct.App.1997) (holding that the "[S]tate's primary interest [is] in the rehabilitation, rather than the punishment, of juvenile delinquents"). We find, therefore, that the trial court erroneously found K.L.N. to be in contempt of court for his failure to follow the Center rules.

Furthermore, "[t]o aid juvenile court judges, the legislature has put at their disposal 'a myriad of dispositional alternatives to fit the unique and varying circumstances of each child's problems.'" *J.D. v. State,* 853 N.E.2d 945, 947–48 (Ind.2006) (quoting *Madaras v. State,* 425 N.E.2d 670, 671 (Ind.Ct.App.1981)); Ind.Code §§ 31–37–19–5(b), –6(b).[2] In examining

2.  Section 5(b) provides, in relevant part, as follows:

> The juvenile court may, in addition to an order under section 6 of this chapter, enter at least one (1) of the following dispositional decrees:
> (1) Order supervision of the child by:
>    (A) the probation department;
>    (B) the county office; or
>    (C) the department.
> * * *
> (2) Order the child to receive outpatient treatment:
>    (A) at a social service agency or a psychological, a psychiatric, a medical, or an educational facility; or
>    (B) from an individual practitioner.
> (3) Order the child to surrender the child's driver's license to the court for a specified period of time.
> (4) Order the child to pay restitution if the victim provides reasonable evidence of the victim's loss, which the child may challenge at the dispositional hearing.
> (5) Partially or completely emancipate the child under section 27 of this chapter.
> (6) Order the child to attend an alcohol and drug services program established under IC 12–23–14.
> (7) Order the child to perform community restitution or service for a specified period of time.
> (8) Order wardship of the child as provided in section 9 of this chapter.

> Section 6(b) provides, in relevant part, as follows:

> Except as provided in section 10 of this chapter and subject to section 6.5 of this chapter, the juvenile court may:
> (1) enter any dispositional decree specified in section 5 of this chapter; and
> (2) take any of the following actions:
> (A) Award wardship to:
>    (i) the department of correction for housing in a correctional facility for children; or
>    (ii) a community based correctional facility for children. Wardship under this subdivision does not include the right to consent to the child's adoption.
> * * *
> (C) If the child is at least seventeen (17) years of age, order confinement in a

the numerous statutes governing juvenile delinquency proceedings, it is evident that the General Assembly has created a detailed, comprehensive statutory scheme with significant breadth and depth. Nowhere in these statutes has the legislature vested the juvenile court with authority to, as the court herein phrased it, "micromanage" the detention of a juvenile delinquent. June 7 Tr. p. 7. And indeed, this course of action is neither a prudent use of scarce judicial resources nor a fair way to treat juveniles.

If an adult who is incarcerated in the Department of Correction violates the rules and regulations of the facility in which he is imprisoned, the facility specifies and implements the consequences of his behavior. A trial court would certainly not have the authority to *lengthen* an inmate's sentence for a failure to abide by the prison rules. We see no reason why juveniles should be treated more harshly than adults under virtually identical circumstances.[3] It is for the facility, not the court, to draft and enforce its rules of occupancy. Here, K.L.N. faced consequences for his bad behavior, including segregation and loss of privileges. The juvenile court was not empowered by statute or other means to impose an additional, judicially-created punishment for K.L.N.'s failure to follow Center rules.

Finally, we note that Indiana Code section 31–37–19–6(b)(2)(C) provides that the maximum amount of time K.L.N., who was over seventeen at the time he committed the underlying offense, could have been detained was 120 days, which was the length of the original detention imposed by the juvenile court.[4] Because the court had

juvenile detention facility for not more than the lesser of:

(i) one hundred twenty (120) days; or

(ii) the maximum term of imprisonment that could have been imposed on the child if the child had been convicted as an adult offender for the act that the child committed....

(D) Remove the child from the child's home and place the child in another home or shelter care facility. Placement under this subdivision includes authorization to control and discipline the child.

(E) Award wardship to a person or shelter care facility. Wardship under this subdivision does not include the right to consent to the child's adoption.

(F) Place the child in a secure private facility for children licensed under the laws of a state. Placement under this subdivision includes authorization to control and discipline the child.

(G) Order a person who is a respondent in a proceeding under ... IC 34–26–5 to refrain from direct or indirect contact with the child.

3. Of course, if a juvenile commits an act that constitutes a new offense for which he could be adjudicated delinquent while he is detained, the juvenile court would have jurisdiction over the new, separate delinquency petition. Moreover, if a juvenile commits an act in criminal contempt of court, the court has statutory authority to punish him accordingly. I.C. § 31–32–14–1.

4. The State argues that because K.L.N. was eighteen when he was adjudicated delinquent, the 120–day limitation does not apply. We must disagree, inasmuch as nothing in the statute suggests that it no longer applies when a juvenile turns eighteen. *See* I.C. § 31–30–2–1(a) (providing that the juvenile court's jurisdiction over a delinquent child continues until the child reaches twenty-one years of age, the court discharges the child and his family, or guardianship of the child is awarded to the Department of Correction).

The State also directs our attention to Indiana Code section 31–37–19–10, which states that a juvenile court may impose a two-year detention on a juvenile who commits an act that would have been, among other things, class B felony burglary, was at least fourteen years old at the time he committed the act, and has two unrelated prior adjudications of delinquency for acts that would have been felonies if committed by an adult. Here, although there is evidence in the record that K.L.N. has a prior history of juvenile adjudications, nothing establishes—and the trial court made no findings—that he has two un-

no authority to impose a sentence longer than 120 days to begin with, it should not be permitted to bootstrap an additional term of detention by finding K.L.N. in contempt under these circumstances. *See B.L.*, 688 N.E.2d at 1313 (" '[j]uvenile courts cannot be permitted to accomplish indirectly that which they could not accomplish directly' ") (quoting *W.M. v. State*, 437 N.E.2d 1028, 1033 (Ind.Ct.App.1982)). Therefore, for all of the reasons discussed herein, we find that the juvenile court erred by finding K.L.N. in contempt of court and imposing a 77–day term of detention based on K.L.N.'s failure to follow Center rules.

The judgment of the juvenile court is reversed.

RILEY, J., and MAY, J., concur.

related prior adjudications for acts that would have been felonies if committed by an adult. Consequently, we cannot conclude that this statute and its longer term of detention could have been applied to K.L.N.