

**FILED**

Aug 15 2019, 8:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Craig E. Beougher
Eric C. Welch
Welch & Company, LLC
Muncie, Indiana

ATTORNEY FOR APPELLEE

Deborah L. Law
Office of Corporation Counsel
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Indy Diamond, LLC,

*Appellant-Defendant,*

v.

The City of Indianapolis,

*Appellee-Plaintiff*

August 15, 2019

Court of Appeals Case No.
18A-OV-2552

Appeal from the Marion Superior
Court

The Honorable Carol J. Orbison,
Senior Judge

Trial Court Cause No.
49D04-1311-OV-42176

**Crone, Judge.**

## Case Summary

[1] Indy Diamond, LLC ("Indy Diamond"),[1] is the owner of a large parcel of property located in Marion County ("the Real Estate"). The Real Estate consists of a severely dilapidated former apartment complex that is currently vacant aside from criminals and squatters who frequent the property. After years of fighting with the City of Indianapolis ("the City") over numerous municipal code violations, the parties entered into an agreed judgment that was adopted by the trial court, whereby Indy Diamond agreed to secure and maintain the Real Estate. Indy Diamond failed to do so, and the City filed a contempt petition. The trial court subsequently found Indy Diamond in contempt and, as a sanction, ordered Indy Diamond to demolish the buildings located on the Real Estate.

[2] On appeal, Indy Diamond contends that the trial court abused its discretion in ordering demolition as a contempt sanction. Indy Diamond further asserts that it has been denied due process and that the trial judge was personally biased against it. Finding neither an abuse of discretion nor a due process violation, and concluding that there is no evidence of personal bias, we affirm.

## Facts and Procedural History

[3] The convoluted history of this case began in November 2013, when the City filed a complaint for injunction, fines, and damages against Indy Diamond

---

[1] The record indicates that Indy Diamond is a foreign limited liability company based in England.

alleging that Indy Diamond was maintaining a public nuisance in violation of Indiana statutory law and municipal codes. Specifically, the City alleged that Indy Diamond was neglecting the Real Estate, commonly known as Oaktree Apartments, and that the Real Estate's deteriorated condition "unreasonably harms the City and citizens it serves and represents by contributing to the urban blight, depressing property values, discouraging development, imperiling the public, and consuming substantial public resources." Appellee's App. Vol. 2 at 2.[2] The City alleged that from July 26, 2012, to August 27, 2013, there had been at least 372 police runs to the Real Estate and 125 police reports for criminal activity including crimes of rape, arson, domestic battery, public intoxication, child abduction, child abuse, burglary, armed robbery, aggravated assault, vandalism, intimidation, and trespassing. The City further alleged that, during the same time period, there had been fifty Department of Code Enforcement and Marion County Public Health Department cases opened against Indy Diamond and at least 146 inspections conducted of and relating to the poor condition of the Real Estate.

[4] In January 2014, the Health and Hospital Corporation of Marion County filed a complaint for injunction and fine against Indy Diamond. Following a hearing, Indy Diamond was ordered to vacate and board all occupied apartment units located on the Real Estate. Consequently, in February 2014, the City filed a request for preliminary injunction to prohibit Indy Diamond

---

[2] The Real Estate, located on Pinehurst Drive in Indianapolis, consists of approximately nineteen acres of land with at least twenty-six buildings situated thereon.

from using the Real Estate for rental purposes and to require Indy Diamond to keep the property fully secured. Thereafter, following a hearing, the trial court granted the City's request, entered a permanent injunction, and, in the City's words, the Real Estate was essentially "condemned." Appellee's Br. at 11.[3]

[5] After the condition of the Real Estate deteriorated further, in August 2015, the City filed an "Emergency Motion for Order Compelling Maintenance of the Property." Appellee's App. Vol. 2 at 25. The City's motion alleged that although Indy Diamond had removed all residents from the Real Estate, it had since failed to maintain the Real Estate in accordance with the municipal code. The allegations of code violations included: (1) the grass and weeds exceeded twelve inches in height; (2) doors and windows on the buildings were not equipped with proper hardware for locking to prevent unauthorized entry; (3) there were several broken windows; and (4) junk, trash, and debris littered the Real Estate. The City also alleged that local police and fire officials had been forced to respond to and address significant public safety concerns at the Real Estate, including two fires on the property and numerous squatters living inside unsafe structures. The City's motion included photographs of the poor conditions of the Real Estate as well as emails from the City to Indy Diamond urging its attention to these matters. Following a hearing, the trial court entered an order compelling Indy Diamond to secure the Real Estate in

---

[3] The trial court found that at least two of the buildings on the property were wholly unfit for habitation due to extensive fire damage. Other buildings had broken windows, mold, and no water service. As of February 2014, only one unit out of 348 was occupied.

accordance with municipal code boarding standards, maintain the Real Estate in a safe and sanitary condition, and to remove any and all unauthorized persons found on the Real Estate. The court set the matter for a September 2015 compliance hearing.

[6] A September compliance hearing was held, after which the trial court found that the evidence presented established that Indy Diamond had failed, without good cause, to comply with the court's previous order. Accordingly, the trial court assessed a $15,000 fine against Indy Diamond, and again ordered Indy Diamond to comply with the previous order to secure and maintain the Real Estate. The matter was set for another compliance hearing on October 7, 2015. Both parties appeared by counsel at that hearing and stipulated that the Real Estate was not in compliance with the court's order. The court gave Indy Diamond two additional weeks to bring the property into compliance. At the next compliance hearing, the trial court found that the evidence presented established that Indy Diamond had again failed, without good cause, to comply with the court's order. The trial court assessed a $30,000 fine against Indy Diamond and ordered Indy Diamond to comply with the previous orders to secure and maintain the Real Estate. The matter was set for a December 2015 compliance hearing, which was subsequently vacated by the parties for unknown reasons.

[7] On July 15, 2016, the City filed a motion for pretrial conference on its original complaint. The City alleged that in both February 2016 and June 2016, it had tried to contact counsel for Indy Diamond but had received no response. The

trial court set the matter for pretrial conference in August 2016, but the parties subsequently agreed to a continuance. In the interim, Indy Diamond agreed to secure all units by August 29, 2016, to establish a mowing schedule, and to mow the property before the conference. Another joint motion to continue was filed in September 2016, and the pretrial conference was reset to December 2016, with a trial date set for January 18, 2017.

[8] Rather than proceed to trial, the parties filed an agreed judgment and order ("Agreed Judgment Order") with the trial court on December 21, 2016. Pursuant to the Agreed Judgment Order, Indy Diamond admitted to all alleged statutory and municipal code violations, agreed to pay a $10,000 fine and court costs, and agreed to comply with all prior orders of the court to secure and maintain the Real Estate. However, the condition of the Real Estate continued to deteriorate throughout 2017. Accordingly, on January 23, 2018, the City filed a verified petition for contempt alleging that Indy Diamond violated the Agreed Judgment Order. Specifically, the City alleged that Indy Diamond had failed to secure and board the buildings on the Real Estate, remove trash and debris, and maintain the Real Estate in a safe and sanitary condition, as required by the Agreed Judgment Order. The City further alleged that Indy Diamond had unpaid fines and court costs totaling $10,133. The petition for contempt also alleged that the City, through its Department of Business and Neighborhood Services, had repeatedly inspected the property and issued numerous board orders, but had been forced to spend taxpayer funds to

continually board and reboard the structures on the Real Estate due to Indy Diamond's failures.

[9] The trial court held a hearing on the City's contempt petition on February 26, 2018. During the hearing, the City presented seventy-eight photographs depicting the condition of the Real Estate. At the conclusion of the hearing, counsel for the City made an oral request for the court to issue a demolition order for the buildings on the Real Estate. Thereafter, on March 2, 2018, the trial court entered its order concluding that based on the evidence presented at the hearing, the City met its burden to show that Indy Diamond was in violation of the Agreed Judgment Order. Accordingly, the trial court entered an order for Indy Diamond to demolish all structures on the Real Estate within sixty days.[4] The trial court further ordered that Indy Diamond thereafter maintain the vacant Real Estate in accordance with the municipal code, so long as Indy Diamond retains an ownership interest in the Real Estate.

[10] Indy Diamond filed a motion to correct error on March 30, 2018, arguing that the City's written contempt petition did not request an order of demolition, and therefore the court's order violated Indy Diamond's due process rights. Indy Diamond further argued that the civil contempt remedy of demolition was improperly punitive rather than coercive or remedial in nature. Accordingly, Indy Diamond requested that the court's demolition order be vacated.

---

[4] The trial court made clear on the record, and in its order, that it would grant a reasonable extension if Indy Diamond needed more time to accomplish the demolition process.

On April 10, 2018, the trial court granted Indy Diamond's motion to correct error and vacated the demolition order. The City subsequently filed an emergency request for a hearing for clarification of the court's order. The matter was set for a hearing on April 25, 2018. During the hearing, the trial court acknowledged the due process concerns with its original demolition order and clarified that it intended to modify the order to give Indy Diamond an additional opportunity to be heard on the issue and the chance to purge itself of the sanction. At the conclusion of the hearing, the trial court issued an order from the bench reinstating the demolition order but holding it in abeyance until June 25, 2018, sixty days from the court's ruling. The trial court's subsequently issued written order provided in relevant part as follows:

> IT IS FURTHER ORDERED that Defendants shall be entitled to relief from the Order to Demolish issued March 1, 2018 provided either of the following [has] occurred:
>
> 1) There has been substantial progress made toward the sale of the property commonly known as 9012 Pinehurst Drive North, Indianapolis IN. Substantial progress shall mean a fully-executed final purchase agreement along with an established timeframe for the closing of the sale of the property; or
>
> 2) The Defendants present evidence they are in compliance with the Agreed Judgment Order dated December 21, 2016.

Appellant's App. Vol. 2 at 59.

The parties appeared for a compliance hearing on June 25, 2018. The City presented evidence that the condition of the Real Estate had further deteriorated

since the prior hearing and was still not in compliance with the Agreed Judgment Order. Although Indy Diamond presented evidence of a prospective buyer and a signed purchase agreement for the Real Estate, the agreement included conditions and contingencies on the sale by the prospective buyer, including that Indy Diamond had to get the demolition order "officially removed" by the end of the inspection period or the buyer refused to proceed. *Id*. at 71. Based upon the evidence presented, on July 13, 2018, the trial court issued an order lifting the stay on the demolition order. The court ordered that Indy Diamond "shall, by August 30, 2018, either close on the sale of the property OR raze the structures at the Real Estate[,]" and "bear all expenses associated with the permitting and demolition process." *Id*. at 72-73. Indy Diamond filed a second motion to correct error, which was denied by the trial court. This appeal ensued.

## Discussion and Decision

[13] On appeal, Indy Diamond does not challenge the trial court's original determination that it was in contempt of the Agreed Judgment Order. Instead, Indy Diamond argues that the trial court abused its discretion in denying its second motion to correct error because, according to Indy Diamond, the trial court's demolition order is an impermissible sanction for civil contempt. Indy Diamond additionally argues that it has been denied due process and that the trial judge was personally biased against it. We disagree on all counts.

[14] Trial courts have broad discretion to determine whether they will grant or deny a motion to correct error. *Luxury Townhomes, LLC v. McKinley Props., Inc.*, 992

N.E.2d 810, 815 (Ind. Ct. App. 2013), *trans. denied*. An abuse of that discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court, or the reasonable inferences therefrom. *Sanders v. Sanders*, 105 N.E.3d 1102, 1106 (Ind. Ct. App. 2018). The trial court's decision comes to this Court cloaked in a presumption of correctness, and the appellant has the burden of proving that the trial court abused its discretion. *Jones v. Jones*, 866 N.E.2d 812, 814 (Ind. Ct. App. 2007). We will neither reweigh the evidence nor judge the credibility of witnesses. *Id*.

## Section 1 – The trial court did not abuse its discretion in ordering demolition as a contempt sanction for Indy Diamond's violation of the Agreed Judgment Order.

As with a motion to correct error, we review the trial court's ruling on a contempt petition for an abuse of discretion. *Mitchell v. Mitchell*, 871 N.E.2d 390, 394 (Ind. Ct. App. 2007). Accordingly, we will affirm unless, after reviewing the record, we conclude that the trial court's decision is against the logic and circumstances before it, and we have a firm and definite belief that a mistake has been made by the trial court. *Id*. "Contempt of court involves disobedience of a court which undermines the court's authority, justice, and dignity." *S.W. ex rel. Wesolowski v. Kurtic*, 950 N.E.2d 19, 21-22 (Ind. Ct. App. 2011) (citation omitted). Contempt falls into two categories—direct and indirect. *Id*. Whereas direct contempt involves actions occurring near the court and of which the court has personal knowledge, indirect contempt involves actions outside the court's presence and personal knowledge. *Id*. A person who

willfully disobeys a lawfully issued court order is guilty of indirect contempt. Ind. Code § 34-47-3-1.

[16] A party who has been injured or damaged by the failure of another person to conform to a court order may seek a finding of contempt. *Kurtic*, 950 N.E.2d at 22. Once a party is found in contempt, the trial court has the inherent authority to fashion an appropriate contempt sanction that is "coercive and remedial in nature." *Meyer v. Wolvos*, 707 N.E.2d 1029, 1031 (Ind. Ct. App. 1999), *trans. denied*. In other words, when a court exercises its civil contempt power—as opposed to its criminal contempt power—the power is not to be used in a primarily punitive fashion, but instead to "coerce action for the benefit of the aggrieved party." *In re Paternity of M.P.M.W.*, 908 N.E.2d 1205, 1209 (Ind. Ct. App. 2009).

[17] Indy Diamond asserts that demolition is an inappropriate civil contempt sanction because it is aimed solely at punishing Indy Diamond. We disagree and conclude instead that the trial court's demolition order is primarily remedial and coercive in nature rather than punitive. *See Moore v. Ferguson*, 680 N.E.2d 862, 866 (Ind. Ct. App. 1997) (recognizing that a civil contempt sanction may still be upheld even if it has "incidental punitive aspects"), *trans. denied*. Based upon our thorough review of the record, there is no question that the trial court's demolition order, as modified by the trial court's June 12, 2018 order on the City's motion to clarify, is primarily designed to provide a remedy for Indy Diamond's repeated failures to comply with the Agreed Judgment Order to secure and maintain the Real Estate. This sanction is both remedial

and coercive because it was imposed to terminate Indy Diamond's continuing contempt of court and to coerce Indy Diamond to perform acts within its immediate power to perform, namely to either bring the Real Estate into compliance with the Agreed Judgment Order or make substantial progress toward the sale of the Real Estate. *See K.L.N. v. State,* 881 N.E.2d 39, 42 (Ind. Ct. App. 2008) (observing that unlike punitive sanctions that punish a person's failure to perform a past act, remedial sanctions coerce performance of an act that is within the person's immediate power to perform) (citation omitted). Contrary to Indy Diamond's assertions, the trial court's modified demolition order constituted a primarily remedial and coercive sanction, and therefore it was not an inappropriate sanction for civil contempt.[5]

[18] Where, as here, a court exercises its inherent civil contempt power and fashions a coercive contempt sanction, we have typically required that there be an opportunity for the contemnor to purge himself or herself of contempt. *Moore*, 680 N.E.2d at 865-66; *see* Ind. Code § 34-47-3-5 (providing that the "court shall, on proper showing … give the defendant a reasonable and just opportunity to be purged of the contempt."). For example, where the trial court imposes a sanction of incarceration, the incarceration order may be "conditioned on the payment of money or the accomplishment of a single task." *M.P.M.W.*, 908

---

[5] Because we find that the demolition order was within the trial court's inherent contempt powers, we need not address Indy Diamond's assertion that the trial court was without statutory authority to order demolition as part of an ordinance enforcement action absent a specific motion by the City and a hearing. *See* Ind. Code § 36-1-6-4 (listing eleven actions a trial court may take, including ordering a structure demolished, as part of an ordinance enforcement action). We similarly decline to address Indy Diamond's inapposite assertion that the equitable doctrine of unclean hands should apply in this case.

N.E.2d at 1210. In this sense, it can be said that, because of the purge condition, the contemnor always carries the "keys to the jail" in his or her pocket. *Duemling v. Fort Wayne Cmty. Concerts, Inc.*, 243 Ind. 521, 526, 188 N.E.2d 274, 277 (1963).[6]

[19]   As noted above, the trial court's modified demolition order gave Indy Diamond two different avenues to purge itself of contempt: (1) comply with the Agreed Judgment Order; *or* (2) prove to the court that there had been substantial progress made toward the sale of the Real Estate.  Indy Diamond presented no evidence that it had, in fact, complied with the Agreed Judgment Order.  Indy Diamond contends, however, that it did provide "clear evidence" to the trial court that substantial progress had been made toward the sale of the Real Estate. Appellant's Br. at 18.  However, the trial court was not so convinced.  Indeed, based upon the testimony and the evidence, the trial court determined that Indy Diamond had not proven that it had made substantial progress toward the sale of the Real Estate.  Specifically, the purchase agreement submitted to the trial court indicated that the prospective buyer had imposed conditions and contingencies on any sale, including a requirement that the demolition order be lifted prior to the end of the inspection period.  During

---

[6] Our supreme court has observed that the "purge" portion of the contempt statute has typically applied only to cases where the trial court has ordered jail time to coerce action by the contemnor. *Reynolds v. Reynolds*, 64 N.E.3d 829, 835 (Ind. 2016). "This is likely because jail time is generally punitive in nature and civil contempt orders avoid punishing the contemnor by allowing the party to be purged of contempt." *Id*. However, the *Reynolds* court specifically noted, "This is not to say that the purge portion of the statute could never apply in the absence of jail time." *Id*. at n.5.  While no jail time was ordered here, to the extent the demolition order can be perceived as incidentally punitive in nature, the trial court properly allowed Indy Diamond the opportunity to purge itself of contempt.

cross-examination of one of Indy Diamond's witnesses, the City further questioned the feasibility of this alleged buyer actually following through with a sale, indicating to the trial court that "we've heard this song and dance before," referring to Indy Diamond's long history of claiming to "almost" have the property sold. Tr. Vol. 2. at 104, 110. The determination that substantial progress had not been made toward the actual sale of the Real Estate was the trial court's prerogative, and we will not reweigh the evidence or reassess credibility on appeal. The trial court did not abuse its discretion in determining that Indy Diamond failed to purge itself of contempt.

## Section 2 – Indy Diamond has not been denied due process.

[20] Indy Diamond maintains that it has been denied due process in this matter. As a general matter, alleged contemnors are guaranteed certain due process and procedural rights. *Reynolds v. Reynolds*, 64 N.E.3d 829, 833 (Ind. 2016). The contempt sanction that is the subject of this appeal was based upon an allegation of indirect contempt because the contemptuous actions at issue took place away from the courtroom and outside the personal knowledge of the trial court. An indirect contempt requires an array of due process protections, including notice and the opportunity to be heard. *In re Nasser*, 644 N.E.2d 93, 95 (Ind. 1994); *see* Ind. Code § 34-47-3-5 (specifying the notice requirements of a rule to show cause).

[21] Indy Diamond argues that because the City never filed a "Motion to Demolish" or specifically requested a demolition order as part of its contempt petition, Indy Diamond was somehow not on notice that a demolition sanction was

possible and thus it has been denied an opportunity to be heard in a meaningful manner on the issue.[7] We find Indy Diamond's argument disingenuous.

[22] Indeed, Indy Diamond made this same due process argument to the trial court during the April 2018 hearing on the City's motion for clarification. The trial court acknowledged the due process concerns with its original demolition order and stated on the record that it recognized the need to attach purge conditions to its contempt sanction and to allow Indy Diamond an additional opportunity to be heard on the demolition issue. Counsel for Indy Diamond made the following recommendation to the trial court:

> My recommendation to the Court would be … reset this for sixty days. *Our client [is] on notice that the City is requesting demolition.* My client then will have sixty days to present to the Court, uh, documentation; either a signed purchase agreement, proof of funding, everything else we need to show the Court that our clients our serious about moving this forward.… I think that will resolve all issues. So, *my client then has fair notice that demolition is on the table*…. So, sixty to – set it out sixty days. We'll have time

---

[7] In a somewhat related argument, Indy Diamond also asserts that the demolition order violates Indiana Trial Rule 15(B) because the issue of demolition was neither raised in the pleadings nor tried by express or implied consent of the parties. *See* Ind. Trial Rule 15(B) (providing that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings" and that an "amendment of the pleadings may be necessary to cause them to conform to the evidence.") As we will explain more fully, demolition was not a new "issue" that needed to be tried by express or implied consent or to which an amendment to the City's original petition to conform the evidence would have been necessary. Rather, the demolition order is a civil contempt remedy fashioned by the trial court within its inherent discretion in contempt matters. Moreover, Indy Diamond has never objected to the City's oral request for demolition on grounds that the request violated Indiana Trial Rule 15(B). Thus, Indy Diamond has waived this argument on appeal. *See Van Winkle v. Nash*, 761 N.E.2d 856, 859 (Ind. Ct. App. 2002) (failure to raise an issue before the trial court results in waiver of that issue on appeal).

we can impress upon our client, guys, it looks like this building is coming down unless, one, we convince the Court that it shouldn't, or two, we've got valid proof showing the Court that we've got real dollars coming into the community. That would be my recommendation.

Tr. Vol. 2 at 63 (emphases added). The trial court did precisely what Indy Diamond's counsel requested: it entered an order holding the original demolition order in abeyance[8] and reset the matter for another evidentiary hearing. A subsequent hearing was held, during which Indy Diamond presented evidence and testimony specifically regarding the demolition issue. Indy Diamond has been afforded more than an adequate opportunity to be heard. There has been no denial of due process.

## Section 3 – There is no evidence that the trial judge was personally biased against Indy Diamond.

[23] Finally, we will briefly address Indy Diamond's assertion that we should reverse the trial court's demolition order because the trial judge was personally biased against Indy Diamond. The law presumes that a trial judge is unbiased. *Richardson v. Richardson*, 34 N.E.3d 696, 703-04 (Ind. Ct. App. 2015). To overcome that presumption, the party asserting bias must establish that the trial judge has a personal prejudice for or against a party. *Id*. "Adverse rulings and findings by the trial judge do not constitute bias per se. Instead, prejudice must

---

[8] We note that Indy Diamond requested that the trial court set aside the original demolition order. The trial court declined to do so, and instead held the order in abeyance. This was eminently reasonable under the circumstances.

be shown by the judge's trial conduct; it cannot be inferred from his [or her] subjective views." *Id*. (citations omitted). Said differently, a party "must show that the trial judge's action and demeanor crossed the barrier of impartiality and prejudiced" that party's case. *Id*. (citing *Flowers v. State*, 738 N.E.2d 1051, 1061 (Ind. 2000)).

[24] Indy Diamond directs us to various statements and comments made by the trial judge on the record which it claims support a finding that the trial judge was personally biased against Indy Diamond. Among other things, Indy Diamond accuses the trial judge of injecting her personal feelings about the Real Estate, in commenting that she was "thoroughly disgusted" by the condition of the Real Estate, that she felt bad that "homeowners in proximity have to look at this dump," and that she did not think she had "seen something this bad ever." Appellant's App. Vol. 3 at 49-50. Additionally, Indy Diamond complains that this particular trial judge had not been involved in the case from the beginning so that her comments illustrated a "clear personal bias" rather than views garnered based upon her involvement in the case itself. Appellant's Br. at 27.

[25] After reviewing the record, we conclude that Indy Diamond has failed to show that the trial judge's actions or demeanor here were in any way improper or crossed the barrier of impartiality. In fact, there is absolutely no evidence of personal bias, and we find Indy Diamond's accusation against this trial judge, which is essentially a claim that the judge violated the Indiana Code of Judicial

Conduct,[9] to be out of line. Simply put, Indy Diamond is attacking the integrity of this trial judge because she has issued a clear and strong sanction for Indy Diamond's continual disregard for the court's authority and its previous order attempting to abate this public nuisance. As far as the judge's comments that may appear to reflect her personal opinion regarding the condition of the Real Estate, we observe that those comments were made in the context of contempt proceedings and were merely observations supported by the evidence. Such evidence included dozens upon dozens of photographs clearly depicting the deplorable condition of the Real Estate. Indy Diamond has not demonstrated that the trial judge was biased.

[26] Pursuant to Indiana Appellate Rule 66(E), we have discretionary authority to assess damages, including appellate attorney's fees, in the event an appeal is "permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Tipton v. Estate of Hofmann*, 118 N.E.3d 771, 777 (Ind. Ct. App. 2019). Although Indy Diamond's claim of bias against the trial judge is, in our opinion, unfounded and meritless, we choose to exercise restraint and decline to assess appellate damages against Indy Diamond.

---

[9] Indiana Judicial Conduct Canon 2 requires a judge to "perform the duties of judicial office impartially, competently, and diligently." Judges must be "objective and open-minded." Rule 2.2, cmt. 1. "A judge shall perform the duties of judicial office ... without bias or prejudice." Rule 2.3(A). A judge shall disqualify himself or herself "in any proceeding in which the judge's impartiality might reasonably be questioned," including in circumstances when "the judge has a personal bias or prejudice concerning a party." Rule 2.11(A).

[27] In sum, Indy Diamond has not met its burden to demonstrate that the trial court abused its discretion in denying its second motion to correct error. The trial court had inherent authority to enter a demolition order as a sanction for Indy Diamond's contempt, and Indy Diamond has been afforded ample due process in this matter. We affirm the trial court's demolition order in all respects.

[28] Affirmed.

Bradford, J., and Tavitas, J., concur.