David L. BARTLEMAY, Appellant–Respondent,

v.

Nancy WITT, f/k/a Nancy Bartlemay, Appellee–Petitioner.

No. 89A04–0802–CV–50.

Court of Appeals of Indiana.

Aug. 25, 2008.

Andrew C. Mallor, Kendra Gowdy Gjerdingen, Mallor Clendening Grodner & Bohrer LLP, Bloomington, IN, Attorneys for Appellant.

Walter S. Chidester, Boston Bever Klinge Cross & Chidester, Richmond, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-respondent David L. Bartlemay appeals the trial court's order finding him in contempt of court for allegedly violating previous orders stemming from the post-dissolution proceedings between David and appellee-petitioner Nancy Witt,

f/k/a Nancy Bartlemay. Specifically, David argues that the trial court improperly used its civil contempt power to "order illegal and punitive remedies and by determining that findings of the court, entered six years before by a different judge, were incorrect." Appellant's Br. p. 1. We reverse and remand to the trial court with instructions to recalculate the attorney fee award.

### FACTS

David and Nancy married and had four children between 1981 and 1992—Jaclyn, Daniel, Rebecca, and Alyse. In 1984, David's father, Victor Bartlemay, set up a trust to contribute to his grandchildren's educational expenses, with David's sister, Robbin Myers, as the trustee. The trust terminated in 1995, and Victor, David, and Robbin established Hunter Properties, LLC (Hunter Properties), to provide funds for Victor's grandchildren's college expenses.

A petition for dissolution of the marriage was filed in 1998[1] and the trial court entered an order dissolving Nancy and David's marriage on February 24, 2000. The trial court incorporated the parties' "Agreement Regarding Children's Issues and Attorney Fees" (the Original Agreement) into its order. Appellant's App. p. 44. In relevant part, the Original Agreement provided that David and Nancy would share joint legal and physical custody of their four children and that

19. Neither parent shall take the children out of school (except for personal illness or injury of the child or a death in the family) without the consent of the other parent.

* * *

37. The children have savings accounts maintained through Parkway Investments. The accounts shall be withdrawn from Parkway Investments and placed in a mutually agreeable bank, in the joint names of each child and of the parents. The mutual consent of the parents is required for any withdrawal exceeding $25.00.

38. The children have college funds through Hunter Properties, LLC. The accounts shall continue to be maintained for the purpose of defraying all or part of the children's post-high school educations (or, if money remains or a child does not attend college) distribution to each child upon the child's 25th birthday. David shall provide to Nancy semi-annual accounting of the children's college funds.

*Id.* at 52, 59.

In 2000 and 2001, the parties filed several petitions and the Honorable Gregory A. Horn presided over a two-day hearing on April 23–24, 2001. On August 29, 2001, the trial court entered a forty-three-page order (the 2001 Order) providing, in relevant part, that

89. Nancy alleges that David has failed to comply with Paragraph 37 of the parties' [Original Agreement] with respect to withdrawing the children's savings account from Parkway Investments.

90. At the time of the Decree all of the children's accounts were transferred, and any monies in Parkway Investments [were] funded by David's father, Vic, after the Decree and was transferred there to pay taxes either from the assets in the trust fund or from Vic.

---

1. The petition is not included in the record, and it is not immediately clear from the record which party filed the petition.

91. Pursuant to Paragraph 38 of the [Original Agreement], the children have college funds through Hunter [P]roperties. Nancy contends that David failed to provide her with a semi-annual accounting of the children's college funds.

92. The children's college funds were set up and continue to be funded by the paternal grandfather, Vic Bartlemay, and David has no control over the accounts. The only accounting David received, which was also provided to Nancy, was the children's tax returns and the letter Greg Shields, C.P.A., wrote in October 2000. David and Nancy reviewed the same information.

*Id.* at 88–89. Additionally, the 2001 Order resolved motions by both parties petitioning the trial court to find the other party in contempt. The trial court ultimately found that both parties were in contempt of the Original Agreement.

In June 2004, David and Nancy entered into an agreed order, which was approved by the Honorable James R. Williams on June 22, 2004 (the 2004 Order). The relevant portion of that order provides that

3. The parties agree that as it relates to [Jaclyn's] post-secondary expenses, which are defined as tuition, books, required fees, room and board ... that said expenses shall be paid as follows: Mother shall contribute the maximum amount of $2,000 annually ($1,000 per semester) and Father shall contribute the maximum amount of $8,000 annually toward her post-secondary education expenses. The remaining monies owed for each semester shall be paid from the trust account held on behalf of [Jaclyn] ... [David] will make a good faith effort to provide [Nancy] with copies of the trust accounts on July 1 and January 1 of each year.

\* \* \*

8. The parties agree that in the year any minor child graduates from high school that they shall exchange tax returns in May of that year in an effort to assess the need for modification of child support. Also, the parties agree to exchange tax returns prior to the twenty-first birthday of any child.

*Id.* at 117–18.

The Honorable Daniel L. Pflum was appointed special judge in this cause on November 14, 2005. Nancy filed a motion to show cause on January 17, 2006, arguing, in part, that David had violated existing court orders by allegedly failing to provide Nancy with semi-annual accountings of the children's college funds or his 2004 tax return. Thus, Nancy asked the trial court to order David to provide her with the last eight semi-annual accountings of the children's college funds. *Id.* at 123.

On April 13, 2006, the court entered an order (the 2006 Order) following a telephonic conference with the parties. The 2006 Order provides, in pertinent part, that

2. Within 20 days of the date of this Order, [David] shall supply [Nancy], at [David's] expense, the following documents with (except as noted below) respect to all four of the parties' children....

a. Each child's 2005 state and federal income tax returns, together with all accompanying forms and schedules.

b. [Jaclyn and Daniel's] Smith Barney account statements, showing assets held in their accounts, the value of such assets, and the date, amount and payee with respect to each withdrawal therefrom, for the period January 1, 2003, through the present (with respect to calendar years 2003,

2004 and 2005, this may be satisfied by providing the year-end statement if the statement shows all the information set forth in this subparagraph) except that [David] need not provide Daniel's 2005 Smith Barney account statement which has already been provided to [Nancy].

c. All documents maintained by or on behalf of Hunter Properties with respect to all interests therein owned by (or held by any trustee on behalf of) each child, including the nature and value of all such interests (i.e., cash or cash equivalents, equities, real estate giving the address and value of such real estate), the date and amount of all additions to or gains on such interests, and the date, amount and payee with respect to all withdrawals, sales or transfer of such interests for the period January 1, 2003 through the present.

*Id.* at 128–29.

On November 27, 2006, Nancy filed a motion to show cause and a request for sanctions, contending, in part, that David had failed to provide the financial documents as required by the 2006 Order. Thus, Nancy asked the court to order David to bring the documents to a court-ordered hearing, hold David in contempt for his continued violation, order David to pay Nancy's attorney fees incident to the enforcement of the trial court's previous order, and sanction David "including without limitation imprisoning [David] until he purges himself of this contempt of this Court by complying with its orders." *Id.* at 144.

A hearing was held on March 19, 2007. On April 9, 2007, Nancy filed another verified motion to show cause, alleging that David had "arranged for the children to be out of school and to be at the courthouse for the hearing[,]" in direct violation of the parties' Original Agreement. *Id.* at 150.

A hearing on all pending matters was held on September 5, 2007. The trial court took the matter under advisement and entered the following findings of fact and conclusions of law on December 14, 2007 (the 2007 Order):

### FINDINGS OF FACT

1. All previous history of the case, including previous findings of fact, constitutes the law of the case.

\* \* \*

3. Three of the parties' children, [twenty-year-old Daniel, seventeen-year-old Rebecca, and fifteen-year-old Alyse], are subject to a support order. Rebecca and Alyse are also subject to a custody order. Jaclyn is emancipated.

\* \* \*

26. David Bartlemay notified Nancy Witt in advance of the March 19, 2007, hearing that the children would be present during the hearing to testify, all though [sic] he intended to request that the minor children speak with the judge in chambers, but did not intend for them to testify in open court in front of the parties.

27. Nancy Witt objected to the children being present at the hearing. David Bartlemay [did not seek [2]] permis-

---

**2.** While the manner in which Finding 27 is worded implies that David *did* seek permission from the trial court, this appears to be a scrivener's error. David acknowledged at the hearing that he did not seek permission from the trial court to bring the children to the hearing, tr. p. 119–20, and the trial court ultimately found David to be in contempt for that decision, appellant's app. p. 40–41.

sion from the court to bring the children.

28. The children have college funds that "were set up and continue to be funded by the paternal grandfather, Vic Bartlemay, and David has no control over the accounts." (Judge Horn's Findings of Fact ¶ 92). David Bartlemay's father, Victor Bartlemay, was the settler of the Bartlemay Grandchildren Irrevocable Trust. It was terminated by its own terms in early [1995 [3]], before the creation of Hunter Properties LLC.

29. David Bartlemay is the managing member of Hunter Properties LLC. David Bartlemay has access to all its books and records and financial information. No evidence was presented that the consent of any other person is required for any member (including a minor child acting through his/her legal custodian) to obtain access to the books, records and financial information of Hunter Properties LLC.

30. The children each own a percent of Hunter Properties, LLC, and their college accounts are funded from their percent. Each child's Schedule K–1 reveals the child's capital account for both the beginning and end of the year. Complete information regarding the value and nature of the children's interests in Hunter Properties LLC may be derived from the year-end balance sheets and income/expense statements along with the Schedule K–1.

31. The June 22, 2004, Agreed Mediated Settlement and Order Require that David Bartlemay "will make a good faith effort to provide Nancy Witt with copies of the trust accounts on July 1 and January 1 of each year."

* * *

33. Every year, Nancy Witt has been sent: the minor children's tax returns; the K–1s[sic] forms for the children's accounts, which contain the accounts' year-end balances and any expenses; spreadsheets documenting the interest earned by the accounts; the amount in the accounts; and the amount distributed from them.

34. On April 19, 2006, the Court ordered David Bartlemay to provide Nancy Witt with: each child's state and federal income tax returns and schedules; daughter [Jaclyn and son Daniel's] Smith Barney account statements from January 1, 2003 through the date of the order; and all Hunter Properties documents concerning the interests owned by each child. David Bartlemay has produced all the documents with the exception of tax returns for any child 18 years of age or older, because the children are adults. David Bartlemay also has not produced any documents specifically detailing the Hunter Properties' interests.

35. David Bartlemay has claimed, in this and prior proceedings in this Court, that the interest of the children in Hunter Properties LLC was held in trust, and that his sister[,] Robbin Myers, was the trustee. David Bartlemay acknowledged in his testimony that the children have been instructed to "go to their Aunt Robbin" for information regarding their college funds or to request money from their college funds. Based on David Bartlemay's inaccurate testimony, the 2001 Order contains incorrect findings regarding the children's interest in Hunter Properties LLC. Specifically,

---

**3.** While the order provides "2005," the record indicates that the trust expired in 1995. Tr. p. 123.

paragraph 92 of the 2001 Order states, "The children's college funds were set up and continue to be funded by the paternal grandfather, Vic Bartlemay, and David Bartlemay has no control over the accounts. The only accounting David Bartlemay received, which was also provided to Nancy Witt, was the children's tax returns and the letter Greg Shields, C.P.A., wrote in October 2000. David Bartlemay and Nancy Witt reviewed the same information." Paragraph 90 of the 2001 Order erroneously refers to the children's "trust fund." David Bartlemay did not provide to Nancy Witt the Hunter Properties LLC documents referred to in this Court's April 13, 2006 Order until August, 2007, nearly one (1) year and four (4) months after the date of the Order.

36. David Bartlemay has used multiple arguments to evade his responsibility to provide the documents, and to excuse his non-compliance with the [Original Agreement], the 2001 Order, the 2004 Agreement, and the April, 2006 Order—that the interests are held in trust, that Nancy Witt must obtain documents from Robbin and not from himself, that he does not have access to the documents, and that the consent of a majority in interest of the members is necessary for financial information to be released to any one member. Each argument has been unsupported by any basis, and [is] simply untrue. David Bartlemay has known that his arguments were unsupported by any basis and untrue.

37. The children's college accounts have paid for almost all of the children's college education.

38. Nancy Witt incurred substantial attorney fees in attempting to obtain documents David Bartlemay has been ordered to, and had agreed to, provide to her. . . .

\* \* \*

*CONCLUSIONS OF LAW AND ORDER*

\* \* \*

C. David Bartlemay did not knowingly and intentionally violate paragraph 19 of the [Original Agreement] by virtue of [Daniel and Jaclyn] having been present for Court on March 19, 2007, as each child is over the age of eighteen (18) years and legally an adult. . . .

D. David Bartlemay did knowingly and intentionally violate[ ] paragraph 19 of the [Original Agreement] by taking [Rebecca and Alyse], both under the age of eighteen (18) years, out of their high school classes and bringing them to Court without either Nancy Witt's consent or the permission of the Court. David Bartlemay had ample time in which to request Nancy Witt's consent and, if she did not give it, to seek the Court's permission and is in Contempt of Court.

\* \* \*

H. David Bartlemay's violation of the Original Agreement, the 2001 Order, the 2004 Agreement, and the April, 2006, Order, with respect to providing a semi-annual accounting to Nancy Witt of the children's college funds, was willful and intentional.

I. Further, David Bartlemay presented evidence to this Court in 2001, to the effect that the children's interest in Hunter Properties LLC was somehow held "in trust", that he knew was inaccurate.

J. David Bartlemay is in Contempt of Court for having violated the [Original Agreement] (paragraph 38), the 2004 Agreement, and this Court's April, 2006 Order.

K. David Bartlemay is in contempt of Court for willfully and intentionally violating the [Original Agreement], the 2004 Agreement, and this Court's April 13, 2006 Order with respect to providing documentation and an accounting of the children's interests in Hunter Properties LLC.

L. Effective August 30, 2008, David Bartlemay shall provide to Nancy, without request and without further Court order, for each child who was under the age of 18 at the end of the prior calendar year, that child's complete tax return, together with all accompanying forms and schedules, the complete Hunter Properties LLC tax return (although David Bartlemay may redact identifying information with respect to all persons other than himself, any other member whose capital account is negative, and the children under age 18 as of the end of the calendar year), the year-end balance sheet, and the year-end income/expense statement. For each child who at the end of the prior calendar year was over the age of 21 and who remains a member of Hunter Properties LLC, and who executes a written consent authorizing the release of said documents to Nancy, David Bartlemay shall provide the same documents to Nancy Witt as to that child.

\* \* \*

R. David Bartlemay shall pay the sum of $13,000.00 for Nancy's legal fees due to his intentional and unjustified failure to comply with various Court Orders and due to his unsupported and inaccurate claim that the children's interest in Hunter Properties LLC is held in trust for them. . . .

S. David Bartlemay is sentenced to ten (10) days in the Wayne County Jail. Said sentence is SUSPENDED at this time,

pending David Bartlemay's compliance with all Court orders, including this Order, in the future. Should David Bartlemay willfully fail to comply with any Court order in the future, such sentence shall be ordered to be EXECUTED in forty-eight (48) hour blocks of time on alternate weekends during Nancy Bartlemay's parenting time, from 6:00 p.m. Friday until 6:00 p.m. Sunday.

Appellant's App. p. 36–42. David now appeals.

## DISCUSSION AND DECISION

David argues that the trial court abused its discretion by finding him in contempt of court for allegedly violating the 2001 Order, the 2004 Order, and the 2006 Order. Specifically, David argues that Nancy was provided with the court-ordered financial documentation, Nancy was not harmed by receiving the information from individuals other than David, and the trial court's punitive remedies were unlawful.

### I. Civil Contempt

Civil contempt is failing to do something a court in a civil action has ordered to be done for the benefit of an opposing party. *JPMorgan Chase Bank, N.A. v. Brown,* 886 N.E.2d 617, 620 (Ind. Ct.App.2008). A party who has been injured or damaged by the failure of another to conform to or comply with a court order may seek a finding of contempt. *Id.* Whether a party is in contempt is a matter left to the sound discretion of the trial court, and we will reverse the trial court's contempt finding only if it is against the logic and effect of the evidence before it or is contrary to law. *Sutton v. Sutton,* 773 N.E.2d 289, 297 (Ind.Ct.App.2002). When reviewing a contempt order, we will neither reweigh the evidence nor judge the credibility of witnesses, and unless we have a firm and definite belief a mistake has been made, the trial court's judgment

will be affirmed. *Id.* To be punished for contempt of a court's order, there must be an order commanding the accused to do or refrain from doing something. *Id.* To hold a party in contempt for a violation of a court order, the trial court must find that the party acted with willful disobedience. *Id.*

As we emphasized in *Marks v. Tolliver*, "the primary objective of a civil contempt proceeding is not to punish the contemnor but to coerce action for the benefit of the aggrieved party." 839 N.E.2d 703, 707 (Ind.Ct.App.2005). In a civil contempt action, imprisonment is for the purpose of coercing compliance with the order. *Id.* Thus, "a contempt order that neither coerces compliance with a court order nor compensates the aggrieved party for loss, and does not offer an opportunity for the recalcitrant party to purge himself, may not be imposed in a civil contempt proceeding." *Id.* (citing *Flash v. Holtsclaw*, 789 N.E.2d 955, 959 (Ind.Ct. App.2003)).

### II. Imprisonment

We will start with the sole issue on which the parties agree—the impropriety of the portion of the trial court's order sentencing David to ten days imprisonment and suspending the sentence contingently upon his compliance with future court orders. As Nancy acknowledges, the trial court's order imprisons David for future noncompliance and does not give him an opportunity to purge himself of the contempt with compliance. Appellee's Br. p. 22. Thus, we reverse this portion of the trial court's order.

### III. Removing Rebecca and Alyse From School

David argues that the trial court abused its discretion by finding him to be in contempt for removing Rebecca and Alyse from school without Nancy's permission to bring them to the hearing on March 19, 2007. Specifically, David contends that "[h]e believed the children's testimony was necessary to refute allegations against him by Nancy and her threats to have him incarcerated." Appellant's Br. p. 19.

As previously noted, Paragraph 19 of the court-approved Original Agreement provides that "[n]either parent shall take the children out of school (except for personal illness or injury of the child or a death in the family) without the consent of the other parent." Appellant's App. p. 52. David testified at the September 2007 hearing that he removed his children from school to bring them to the March 2007 hearing because "I believed that they were very pertinent witnesses to several of the things that [Nancy was] accusing me of." Tr. p. 119. At the September 2007 hearing, David testified that he notified Nancy of his intention to remove the children from school for the hearing; however, he acknowledged that Nancy did not consent. *Id.*

We agree with Nancy and the trial court that David violated the Original Agreement by failing to obtain Nancy's permission before removing Rebecca and Alyse from school to bring them to the hearing. However, we conclude that the trial court abused its discretion by finding David in contempt for that action. David had a right to present evidence at the hearing, including the viewpoints of his daughters. *See Miller v. Indus. Hardwoods Corp.*, 775 N.E.2d 1168, 1171 (Ind.Ct.App.2002) (holding that "due process clearly requires a fair opportunity to be heard[, which] includes the right to present evidence ...."). Although it would have been better for David to have obtained Nancy's consent or sought the trial court's permission before bringing the girls to court, it was an abuse

of discretion for the trial court to exercise its contempt power in this situation. Had the trial court denied a proffered petition from David, we would be facing possible due process violations instead of the instant issue. Thus, we conclude that the trial court abused its discretion by finding David in contempt on this basis and we reverse this portion of the trial court's order.

## IV. Financial Documents for Hunter Properties

■ David argues that the trial court abused its discretion by finding him to be in contempt for allegedly violating previous trial court orders to provide Nancy with financial documents regarding the children's accounts with Hunter Properties. Specifically, he argues that he has made a good faith effort to comply with the orders—as required by the 2004 Order—and that Nancy has been provided sufficient financial information regarding the children's interests in Hunter Properties.

During the eight years since the parties entered into the court-approved Original Agreement, David and Nancy have struggled to find a way to navigate Paragraph 38—the provision referencing Hunter Properties and requiring David to provide Nancy with "semi-annual accounting of the children's college funds." Appellant's App. p. 59. In 2004, Nancy filed a motion to show cause and asked the trial court to find David in contempt for not providing the requisite financial documents. The trial court dismissed Nancy's motion after the parties entered into an agreed order that was approved by the trial court. The 2004 Order required David to "make a good faith effort to provide [Nancy] with copies of the trust accounts on July 1 and January 1 of each year[,]" and further provided that "except as modified herein all of the prior Orders remain in full force and effect." *Id.* at 117–18 (emphasis added). At the September 2007 hearing, the parties agreed that the 2004 Order modified the Original Agreement with regard to David's obligation to provide financial documents regarding Hunter Properties to Nancy. Tr. p. 85.

At the September 2007 hearing, Robbin's deposition from October 2006 was entered into evidence. Ex. C. During the deposition, Robbin attested that she is the bookkeeper of Hunter Properties and that she had disclosed the Bartlemay children's financial information to Nancy:

Q. [Robbin's Attorney:] ... Robbin, have you given a copy of your analysis of the children's interests in Hunter Properties to [Nancy's attorney]?

A. [Robbin:] Before?

Q. Before.

A. Yes.

Q. And have you given that to Nancy Witt before?

A. Yes.

Q. How often did you give that to Nancy Witt?

A. For a while I think we were doing it about every year. I was trying to remember to do it every year.

Q. How did you submit your analysis of the children's interests in Hunter Properties to Ms. Witt?

A. I would give her copies of their K–1, which would tell her what their earnings were and how much they had in their accounts, because it would have the balance of their account at the time.

\* \* \*

Q. [Robbin's Attorney:] So the K–1 would show each child's individual capital account?

A. [Robbin:] Yes.

Q. And whatever distributions were made from that capital account?

A. Yes.

Q. Because that would be a reduction in the capital account at the end of the year?

A. I have also from time to time done spread sheets for her and given them to her so that she can see. . . .

Ex. 5 at 5, 8.

David testified at the hearing that it is not possible to do semi-annual accounting on the children's Hunter Properties interests because it would not "have any kind of discernable [sic] meaning." Tr. p. 139–40, 158. David further attested that Robbin had annually provided Nancy with year-end financial information regarding the children's interests in Hunter Properties—specifically, the K–1 forms and the spreadsheets. *Id.* at 140–41, 158–62.

Although Nancy acknowledged at the hearing that she had received the spreadsheets and K–1 forms, she maintained that David was in contempt of previous court orders because "[t]here were documents PROVIDED, but they did not give me bi-annual statements." *Id.* at 86 (emphasis in original). Nancy further argued that David was in contempt despite the fact that she had received the financial information because Robbin, not David, had provided the documents to her. Specifically, Nancy emphasized, "Yes, it is, but it's David's responsibility, according to our agreement." *Id.* at 87.

In the 2007 Order, the trial court found David to be in contempt for "willfully and intentionally violating the Original Agreement,[4] the 2004 Agreement, and this Court's April 13, 2006 Order with respect to providing documentation and an ac-

counting of the children's interests in Hunter Properties LLC." Appellant's App. p. 41. However, this conclusion seems to contradict the trial court's findings that

30. The children each own a percent of Hunter Properties, LLC, and their college accounts are funded from their percent. Each child's Schedule K–1 reveals the child's capital account for both the beginning and end of the year. Complete information regarding the value and nature of the children's interests in Hunter Properties LLC may be derived from the year-end balance sheets and income/expense statements along with the Schedule K–1.

\* \* \*

33. *Every year, Nancy Witt has been sent:* the minor children's tax returns, the K–1s[sic] forms for the children's accounts, which contain the accounts' year-end balances and any expenses, spreadsheets documenting the interest earned by the accounts; the amount in the accounts; and the amount distributed from them.

*Id.* at 39 (emphasis added). Findings 30 and 33 indicate that the trial court relied upon the evidence presented at the hearing that Nancy had received complete information regarding the value and nature of the children's interests in Hunter Properties "[e]very year." *Id.*

We reject Nancy's hypercritical argument that David is in contempt because Robbin, at David's request, provided Nancy with the financial information. As for David's failure to provide Nancy with the financial information twice a year, the only evidence in the record is that biannual accounting is not possible under these cir-

---

4. We initially note that the trial court erred by finding that David had willfully violated the Original Agreement, inasmuch as the 2004

Order modified the Original Agreement on this issue.

cumstances. Furthermore, we note that the 2006 Order did not command David to provide biannual accounting; instead, it ordered David to provide Nancy with the requisite financial information for the previous years, and the evidence in the record leads to the conclusion that Nancy received that information. Finally, we note the parties' agreed-upon language from the 2004 Order that David would "make a good faith effort" to provide Nancy with the financial information twice a year, appellant's app. p. 117, and we again emphasize the unrefuted evidence in the record that biannual accounting is not possible.

In sum, the trial court's findings and the evidence in the record do not support the trial court's conclusion that David was in contempt—each year, Nancy has received adequate financial information detailing the children's interests in Hunter Properties. Thus, we find that the trial court abused its discretion by finding David to be in contempt, and we reverse the challenged portion of the trial court's order.[5]

### V. Attorney Fees

■ David argues that the trial court erred by ordering him to pay $13,000 in attorney fees. Specifically, he argues that this portion of the trial court's order is punitive and does not adhere to the principles of civil contempt.

■ As we held in *Van Wieren v. Van Wieren*,

> [i]n post-dissolution proceedings, the trial court may order a party to pay a reasonable amount toward an opposing party's attorney fees. A trial court's decision to grant or deny attorney fees is left to the sound discre-

tion of the trial court, and a decision to deny attorney fees will be reversed only for an abuse of discretion. The trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before it.

> When determining whether an award of attorney fees is appropriate, the court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors that bear on the reasonableness of the award. Additionally, the trial court may take into account any misconduct on the part of one party that causes the other party to directly incur additional fees. When one party is in a superior position to pay fees over the other party, an award of attorney fees is proper.

858 N.E.2d 216, 224 (Ind.Ct.App.2006) (citations omitted).

The trial court ordered David to pay "the sum of $13,000.00 for Nancy's legal fees due to his intentional and unjustified failure to comply with various Court Orders and due to his unsupported and inaccurate claim that the children's interest in Hunter Properties LLC is held in trust for them." Appellant's App. p. 42. David does not deny that the trial court was authorized to order him to pay attorney fees for violating previous court orders. However, David attacks the punitive nature of the trial court's reliance on its belief that David inaccurately testified in 2001.

We can discern from the parties briefs and the trial court's findings that there has

**5.** We strongly encourage both David and Nancy to find a way to navigate their differences on this issue. As the trial court noted, it is clear that David has not always been cooperative in providing Nancy with financial information about the children's interests in Hunter Properties. However, we caution Nancy from being hypercritical after she receives adequate information. Thus, we implore the parties to find a mutually agreeable manner in which to address Nancy's need for the financial information that only considers seeking court intervention as a last resort.

been prolonged confusion about the nature of the children's interests in Hunter Properties—specifically, whether those interests are held in trust. While David testified in 2001 that the interests were held in trust, "[b]y 2006, David understood that there was not a formal trust with respect to the children's interests...." Appellant's Br. p. 5. Thus, in the 2007 Order, the trial court found that

> 35. David Bartlemay has claimed, in this and prior proceedings in this Court, that the interest of the children in Hunter Properties LLC was held in trust, and that his sister[,] Robbin Myers, was the trustee. David Bartlemay acknowledged in his testimony that the children have been instructed to "go to their Aunt Robbin" for information regarding their college funds or to request money from their college funds. Based on David Bartlemay's inaccurate testimony, the 2001 Order contains incorrect findings regarding the children's interest in Hunter Properties LLC. Specifically, paragraph 92 of the 2001 Order states, "The children's college funds were set up and continue to be funded by the paternal grandfather, Vic Bartlemay, and David Bartlemay has no control over the accounts. The only accounting David Bartlemay received, which was also provided to Nancy Witt, was the children's tax returns and the letter Greg Shields, C.P.A., wrote in October 2000. David Bartlemay and Nancy Witt reviewed the same information." Paragraph 90 of the 2001 Order erroneously refers to the children's "trust fund." ...

Appellant's App. p. 39.

We agree with David that the trial court abused its discretion by awarding attorney fees based on its belief that David intentionally gave inaccurate testimony when he testified in 2001 before a different trial judge. There is no evidence that David intentionally misled the trial court in 2001. Moreover, that judge was in a better position to address David's credibility at that time.

■ Finally, in addition to the issues we have already addressed, the trial court also found David to be in contempt of court for violating a provision of the Original Agreement that prohibited him from allowing a "person of the opposite gender to whom he/she is unrelated by blood or marriage ... to be present overnight in the residence of that parent ... when he/she is exercising parenting time with the children."[6] Appellant's App. p. 41, 49. David does not appeal this contempt finding; thus, one valid finding remains on which the trial court could award attorney fees. However, in light of our conclusion to reverse the other contempt findings in conjunction with the trial court's improper reliance on David's allegedly dishonest testimony from 2001, we remand to the trial court with instructions to recalculate the award of attorney fees.

The judgment of the trial court is reversed and remanded with instructions.

ROBB, J., and MATHIAS, J., concur.

---

6. As an aside, we note that David ultimately married the woman with whom he had been living. Thus, David's living arrangement no longer violates the Original Agreement.