**Rocky A. FLASH, Appellant–Respondent,**

v.

**Susan HOLTSCLAW, Appellee–Petitioner.**

No. 49A04–0210–CV–480.

Court of Appeals of Indiana.

April 21, 2003.

Publication Ordered June 3, 2003.

Rehearing Denied June 12, 2003.

Joel M. Schumm, Indianapolis, IN, Attorney for Appellant.

Ronald W. Oakes, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Rocky Flash (Flash) appeals the trial court's determination that he is in contempt of court for violating a protective order and also appeals the penalties imposed, the denial of his motion for a protective order against Susan Holtsclaw (Holtsclaw) and an order for the payment of attorney fees. We affirm in part and reverse in part.

### Issues

Flash purportedly raises six issues. We address those issues that are not waived,[1] which we consolidate and restate as four issues:

I. Whether the finding of contempt was proper;

II. Whether the orders for incarceration were proper;

III. Whether the trial court erroneously denied Flash's motion for a protective order against Holtsclaw; and

IV. Whether the trial court erroneously awarded attorney fees incurred in defending federal lawsuits.

### Facts and Procedural History

Flash and Holtsclaw were romantically involved for several months. During the relationship, Flash became convinced that Holtsclaw needed treatment for alcohol abuse. He endeavored to secure her alcohol treatment by various means: writing to the President of the United States, writing to Florida Governor Jeb Bush, drafting the "Susan Holtsclaw Bill" (the Bill), calling an Indianapolis radio talk show to discuss the merits of the Bill, disseminating copies of the Bill to Holtsclaw's friends and acquaintances, contacting various businesses to demand that no alcohol be served to Holtsclaw, declaring his candidacy for Congress and naming Holtsclaw as the Treasurer of his Florida campaign funds, writing to the trial court judge to request examination of Holtsclaw, inducing an alcohol treatment counselor in Washington, D.C. to contact Holtsclaw by telephone, and filing various lawsuits in federal courts, including his "Complaint for Dangerous Behavior."[2] (Pet. Ex. 1.) Flash also disseminated approximately one hundred copies of a letter from a mental

---

1. Flash alleges deficiencies in some of the trial court's orders on Rule to Show Cause and in Holtsclaw's petition for an extension of the protective order. Further, he attempts to challenge the propriety of the trial court's appointment of Flash's public defender to simultaneously represent him, in consolidated proceedings, in pursuing his motion for a protective order. He does not claim any prejudice from the representation. Nevertheless, these matters were not litigated before the trial court. It is well-settled that a party cannot argue on appeal an issue that was not properly presented to the trial court. *Pitman*

*v. Pitman*, 717 N.E.2d 627, 633 (Ind.Ct.App. 1999). When an issue is not presented before the trial court, appellate review of that issue is waived. *Id.*

2. On February 25, 2002, the Marion County Superior Court received a copy of an order from the United States District Court Middle District of Florida, Tampa Division, dismissing Flash's "Complaint for Breach of a Parol [sic] Contract" as frivolous and malicious. (App. 6, 76.)

health counselor discussing Holtsclaw's possible alcohol dependence.

On June 29, 2001, Holtsclaw secured an Emergency Temporary Protective Order against Flash. On August 24, 2001, Holtsclaw filed the first of eight petitions for contempt. On November 28, 2001, a hearing was held to determine whether the temporary protective order should be made permanent and whether Flash should be held in contempt of court for violation of the existing order. At the conclusion of the hearing, the trial court issued a permanent protective order and found Flash in contempt of court. Flash was sentenced to sixty days imprisonment, suspended on the condition that he have no contact with Holtsclaw. Flash was also ordered to pay $1,000.00 in attorney fees. The judgment was not appealed.

On July 16, 2002, Flash filed a petition for a protective order against Holtsclaw. On August 27, 2002, Holtsclaw filed a motion to extend the permanent protective order against Flash. On September 4, 2002, a hearing was held on the respective protective order motions and the successive motions for contempt. At its conclusion, the court found Flash in contempt, ordered him to serve the previously suspended sixty days in jail as well as an additional ninety days, denied Flash's motion for a protective order, and extended Holtsclaw's protective order against Flash to November 28, 2003. Flash was also ordered to pay $3,500.00 in attorney fees. Flash now appeals.

**Discussion and Decision**

*I. Finding of Contempt*

Indiana Code section 34–47–3–1 provides as follows:

A person who is guilty of any willful disobedience of any process, or any order lawfully issued:

(1) by any court of record, or by the proper officer of the court;

(2) under the authority of law, or the direction of the court; and

(3) after the process or order has been served upon the person;

is guilty of an indirect contempt of the court that issued the process or order. Indirect contempt proceedings require due process protections, including notice and the opportunity to be heard. *Carter v. Johnson*, 745 N.E.2d 237, 241 (Ind.Ct.App. 2001).

Civil contempt is failing to do something that a court in a civil action has ordered to be done for the benefit of an opposing party. *Cowart v. White*, 711 N.E.2d 523, 530 (Ind.1999). A party who has been injured or damaged by the failure of another to conform to a court order may seek a finding of contempt. *Id.* Whether a party is in contempt is a matter left to the discretion of the trial court. *Id.* We reverse a trial court's finding of contempt only if there is no evidence or inferences drawn therefrom that support it. *Id.*

Here, the trial court held Flash in contempt of the protective order, reasoning as follows:

You are going around to various bars and other locations, sending them letters with no legal basis, based upon my opinion of current Indiana law, with the sole intent to harass her, to stop her from frequenting those places, and to stop her from doing what she has every legal right to do in this state, which is consume what I call adult beverages, alcoholic beverages....

His method of service, among the many other things that were testified to today, the many other pleadings that have been filed in this court and others, constitute a violation of the Court's previous or-

ders. His efforts, again, in sending letters to these various bars, these businesses, also constitute a violation of the protective order.

(Tr. 175–78.) We agree with Flash that the trial court's finding of contempt may not properly be predicated upon his exercise of the right to pursue claims in federal courts. However, the court's finding of contempt does not rest solely upon the filing of lawsuits, but was partially predicated upon Flash's attempt to personally serve Holtsclaw documents relative to a lawsuit ostensibly filed by his ex-wife and children, a lawsuit in which Flash was not a named party. Moreover, the finding of contempt is supported by testimony that Flash ignored former orders of court when he telephoned Holtsclaw, monitored her activities, and disseminated information about Holtsclaw via the Internet, mail and telephone. There is sufficient evidence to support the trial court's determination that Flash knowingly violated an order of court that he refrain from contacting Holtsclaw and from harassing her.

■ Further, we reject Flash's contention that he was denied due process. Flash was given notice and the opportunity to show that he should not be punished, unlike the defendant who appealed *ex parte* proceedings in *Carter,* upon which Flash relies to no avail. Although Flash arguably lacked ample time to respond to the eighth motion for contempt, filed eight days in advance of the hearing, his counsel specifically acquiesced to its inclusion at the September 4, 2002 hearing.

As such, the trial court was within its discretion in finding Flash in contempt of court.

*II. Order for Incarceration*

■ A court's inherent civil contempt powers are both coercive and remedial in nature. *Evans v. Evans,* 766 N.E.2d 1240, 1244 (Ind.Ct.App.2002). The primary objective of a civil contempt proceeding is not to punish the contemnor, but to coerce action or to compensate the aggrieved party. *Id.* at 1245. In a civil contempt action, imprisonment is for the purpose of coercing compliance with the order. *MacIntosh v. MacIntosh,* 749 N.E.2d 626, 631 (Ind.Ct.App.2001), *trans. denied.* Nevertheless, a contempt order which neither coerces compliance with a court order or compensates the aggrieved party for loss, and does not offer an opportunity for the recalcitrant party to purge himself, may not be imposed in a civil contempt proceeding. *Id.*

■ The trial court properly ordered Flash to serve the sixty-day suspended sentence. The suspended sentence order was clearly intended to coerce Flash's compliance with the protective order. He was afforded the opportunity to purge himself of contempt, and avoid serving the sentence, by adhering to the protective order. He failed to do so.

■ However, the ninety-day additional sentence is purely punitive. The order punishes a past act, and affords Flash no opportunity to avoid the term of imprisonment. As such, it is improper in civil contempt proceedings.

*III. Denial of Flash's Motion for Protective Order*

■ Flash also complains that the trial court erred in denying his motion for a protective order against Holtsclaw. When, as here, the appeal is from a negative judgment, this Court will reverse only if it is convinced that the evidence as a whole was such that it leads unerringly and unmistakably to a decision opposite that reached by the trial court. *Smith v. State,* 770 N.E.2d 290, 295 (Ind.2002). Too, we defer to the trial court's determination

of the credibility of witnesses. *Cowart,* 711 N.E.2d at 531.

In support of his motion, Flash testified that Holtsclaw had broken his finger two years earlier. He did not elaborate on the circumstances surrounding that event. He also testified concerning conduct he considered harassment by unidentified individuals, as follows:

> I was playing a two-hand—actually a flag football game last Wednesday. I have received numerous phone calls from people—I can't say if they're actually from McGilvery's or not—on my answering machine telling me to stop, leave Susan alone or else. I thought I had scored a touchdown and I was the quarterback. I kind of went through the end zone. Somebody tackled me wearing a McGilvery's t-shirt. One of the opposing players was wearing a McGilvery's t-shirt and broke my ankle. Though I cannot prove that it was by her order, which I don't believe it was, it is amazing how somebody that attends McGilvery's would take a blatant cheap shot at me. But that is not her, but this is what I've had to endure. The slander case, I wish to point to the Court, that it includes mafia-style intimidation which Judge Barker has not dismissed. This Court, upon granting Susan the protective order, has made me a mark for these two want-to-be New York City ganglanders. And they have attacked me, they have harassed me, they have abused me, they have slandered my name, they have defamed my character.

(Tr. 159–60.) In sum, Flash presented evidence that Holtsclaw had broken his finger under undisclosed circumstances and that he perceived intimidation from unidentified persons possibly acting on Holtsclaw's behalf. We do not conclude that the evidence pointed unerringly to a decision opposite that reached by the trial court.

*IV. Attorney Fees*

██ Finally, Flash challenges the $3,500.00 award of attorney fees as improperly inclusive of fees generated when Holtsclaw defended against federal lawsuits.

██ Attorney fees are available in civil contempt proceedings. *Cowart,* 711 N.E.2d at 533. While the taking of evidence on reasonable attorney fees is a preferable practice, the trial court may take judicial notice of what constitutes a reasonable amount of attorney fees in routine cases involving relatively small amounts. *Reed Sign Serv., Inc. v. Reid,* 755 N.E.2d 690, 699 (Ind.Ct.App.2001).

Holtsclaw's counsel represented to the court that his legal fees had reached $14,000.00, a sum beyond Holtsclaw's ability to pay. Inasmuch as Flash had initiated several federal lawsuits, at least one of which named Holtsclaw's counsel as a defendant, it is reasonable to assume that the $14,000.00 sum included fees incurred in defending against federal lawsuits. However, the trial court awarded substantially less than $14,000.00; specifically, $3,500.00. The trial court was within its discretion to find this relatively small amount reasonable for legal representation through protracted proceedings involving eight motions for contempt and multiple court appearances.

**Conclusion**

We find no error in the trial court's determination that Flash was in contempt of a court order, the denial of Flash's motion for a protective order or the award of attorney fees. We affirm the trial court's order revoking the suspension of Flash's sixty-day sentence, but reverse the

order for an additional ninety days imprisonment.

Affirmed in part; reversed in part.

ROBB, J., and BARNES, J., concur.

### ORDER

This Court having heretofore handed down its opinion in this appeal on April 21, 2003, marked Memorandum decision, Not for Publication;

Comes now the Appellant, by counsel, and files herein Motion to Publish said opinion, alleging therein that said opinion provides useful information and clarification of the proper parameters of civil contempt power and clarifies the law concerning appellate review of the denial of a protective order and prays this Court to publish is opinion in this cause.

The Court having examined said Motion and being duly advised, now finds that the same should be granted.

IT IS THEREFORE ORDERED that upon the above-recited Motion, this Court's opinion heretofore handed down in this cause on April 21, 2003, marked Memorandum Decision, Not for publication is now ordered published.

**J.L., Appellant–Respondent,**