# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 23 2016, 8:03 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael Griffin
McCordsville, Indiana

ATTORNEYS FOR APPELLEE

Holly L. Lyons
Greenfield, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| H.F., <br> *Appellant-Petitioner,* <br><br> v. <br><br> M.M., <br> *Appellee-Respondent.* | June 23, 2016 <br><br> Court of Appeals Case No. 30A01-1601-PO-137 <br><br> Appeal from the Hancock Superior Court <br><br> The Honorable Terry K. Snow, Judge <br><br> The Honorable R. Scott Sirk, Commissioner <br><br> Trial Court Cause No. 30D01-1505-PO-856 |

**Altice, Judge.**

### Case Summary

[1] H.F. sought a protective order against M.M., which was initially denied. H.F. sought review of the denial and the matter was set for hearing. When M.M.

failed to appear at the hearing, an ex parte order of protection was issued. M.M. filed a motion for relief from judgment pursuant to Ind. Trial Rule 60(B), which the trial court granted. The trial court, however, ordered that the protective order remain in effect until a hearing on the merits of the protective order could be held. Following a subsequent contested hearing, the trial court determined that H.F. did not meet her burden and therefore terminated the protective order. H.F. appeals, presenting three issues for our review which we revise and restate as:

> 1. Was the trial court's decision to set aside the ex parte protective order on grounds that M.M. was not afforded proper notice clearly erroneous?

> 2. Did the trial court err in terminating the protective order previously imposed against M.M.?

We affirm.

## Facts & Procedural History

H.F. and M.M. were former neighbors and had been friends for a number of years before M.M.'s husband, J.M., filed for divorce. After the divorce was final, H.F. introduced J.M. to a friend of hers, who would later become J.M.'s second wife. Shortly after M.M. found out that H.F. introduced J.M. to another woman, H.F. began receiving what she described as threatening text messages from M.M..

[4] In May 2013, H.F. received an undated, typed letter in the mailbox[1] at her home that contained a slew of vulgar statements and profanity and was extremely demeaning to H.F. and her family. In May 2015, H.F. received another undated, typed profane letter[2] in the mailbox that made reference to a particular phrase H.F. had used in a conversation the previous night with a teacher at a school function. The teacher related the phrase and other contents of her conversation with H.F. to M.M., who was also at the school function.

[5] On May 29, 2015, H.F., pro se, filed a petition seeking a protective order against M.M. on grounds that she was a victim of stalking. The trial court denied the petition the same day based upon H.F.'s failure to show a relationship giving the court authority to issue a protective order. On June 5, 2015, H.F. filed a petition asking the trial court to reconsider the denial of her request, and the trial court set the matter for hearing on July 6, 2015. The Clerk of the Court provided for service of notice of the hearing to the address identified as M.M.'s current address in the Clerk's records. On June 22, 2015, H.F. filed an amended petition for a protective order in which she identified M.M.'s current address, which was different than that contained in the Clerk's records. When M.M. did not appear for the July 6 hearing, the trial court issued an ex parte order of protection.

---

[1] The letter was not mailed, but rather was placed in her mailbox.

[2] Again, this letter was not mailed, but rather was placed in her mailbox.

On August 28, 2015, M.M. filed a motion for relief from judgment/order on the basis that she had not been served with notice of the July 6 hearing. *See* Ind. Trial Rule 60(B). After a couple of continuances, the trial court held a hearing on M.M.'s motion on November 30, 2015. At the end of the hearing, the trial court granted M.M.'s motion, but ordered that the protective order remain in effect until such time as the parties appeared for a contested hearing on the merits of H.F.'s protective order request.

The trial court held a contested hearing on H.F.'s request for a protective order on December 15, 2015. After considering the evidence and the parties' arguments, the trial court found that H.F. had not met her burden with respect to establishing the stalking requirement for issuance of a protective order. The trial court therefore terminated the protective order previously issued. H.F. filed the instant appeal on January 14, 2016. Additional facts will be provided as necessary.

## Discussion & Decision

### T.R. 60(B)

H.F. argues that the trial court erroneously applied the requirements of Ind. Trial Rule 5(B)(1)(a)[3] in granting M.M.'s T.R. 60(B) motion to set aside the ex

---

[3] T.R. 5(B)(1)(a) provides, in pertinent part, that "[r]efusal to accept an offered or tendered document is a waiver of any objection to the sufficiency or adequacy of service of that document."

parte protective order based on lack of notice.[4] H.F. also argues that because the trial court only vaguely referenced "mistake or excusable neglect, or other reasons" and never considered whether M.M. had a meritorious defense, its decision to set aside the protective order cannot stand.

[9] We need not address H.F.'s arguments in this regard because we find her challenge to the trial court's decision to set aside the ex parte protective order based on lack of notice to be untimely. As our Supreme Court has observed, "[a] ruling or order of the court denying or granting relief, in whole or in part, by motion under [T.R. 60](B) of this rule shall be deemed a final judgment, and an appeal may be taken therefrom as in the case of a judgment." *Front Row Motors, LLC v. Jones*, 5 N.E.3d 753, 757 (Ind. 2014) (quoting Ind. Trial Rule 60(C)); *see also* Ind. Appellate Rule 2(H)(3) ("A judgment is a final judgment if . . . it is deemed final under Trial Rule 60(C)").

[10] Here, at the end of the November 30 hearing that was set to consider M.M.'s T.R. 60(B) motion, the trial court informed the parties that it was granting M.M. the relief she sought,[5] which was to set aside the ex parte protective order

---

[4] H.F. notes that someone wrote "Return to Sender" and "Do Not Forward" on the envelope tendered by and returned to the Hancock County Sheriff's Department, which envelope contained the notice of the July 6 hearing. H.F. claims that the handwriting "appears to match the handwriting" of M.M. and tendered her own testimony as well as J.M.'s testimony that they each recognized the handwriting on the envelope to be M.M.'s. *Appellant's Brief* at 7. H.F. contends that such evidence demonstrates that M.M. "refused" the tendered service and thus, cannot now challenge the sufficiency or adequacy of service. *See* T.R. 5(B)(1)(a). M.M. maintains that she did not receive service of notice of the hearing and points out that the notice was mailed to a previous address.

[5] An entry was also made in the chronological case summary.

and give her an opportunity to be heard. The court then set a hearing to consider the merits of H.F.'s request for a protective order, with the caveat that the protective order would remain in place until such time. Pursuant to T.R. 60(C) and App. R. 2(H)(3), the trial court's ruling in this regard was deemed a final judgment thereby triggering the time for appeal. *See Hays v. Hays*, 49 N.E.3d 1030, 1036 n.1 (Ind. Ct. App. 2016); *Rainbow Cmty., Inc. v. Town of Burns Harbor*, 880 N.E.2d 1254, 1262 (Ind. Ct. App. 2008). H.F., however, did not initiate an appeal challenging the trial court's grant of M.M.'s requested relief.

[11] To the extent the record is not explicit as to the trial court's decision to set aside the ex parte protective order given that the trial court left the protective order in effect, we observe that the court clearly stated it was granting M.M.'s requested relief, which was to have a hearing on the merits of the protective order. Implicit in the court's ruling is that it was granting the motion to set aside. Further, at the start of the subsequent hearing on December 15, 2015, the trial court expressly noted it had granted M.M.'s motion to set aside the ex parte protective order, and H.F. did not object. Rather, H.F. proceeded by presenting evidence in support of her petition for a protective order.

[12] It was only after the trial court determined that H.F had not met her burden and thus, terminated the protective order, that H.F. initiated this appeal on January

14, 2016. This was more than thirty days[6] after the November 30 hearing during which the trial court granted M.M. the relief she requested in her motion to set aside the ex parte protective order. We therefore conclude that H.F.'s arguments relating to the trial court's decision to set aside the ex parte protective order on the ground that M.M. was not afforded notice of the July 6, 2015 hearing are untimely and therefore waived.

[13] Waiver notwithstanding, H.F.'s claim that M.M. contrived her claim of lack of notice by writing "Return to Sender," "Do Not Forward," and "Moved" on the envelope containing the notice is simply a request to reweigh evidence and assess credibility of the witnesses. Thus, even if the issue were properly before us, H.F.'s argument would not be successful.

## Protective Order

[14] H.F. argues that the trial court abused its discretion in finding that she did not establish stalking sufficient to support the issuance of a protective order. Specifically, H.F. maintains that the trial court's questions to H.F. regarding physical violence between her and M.M. indicate that the trial court erroneously considered physical violence to be a required element of stalking.

[15] "Generally, a trial court has discretion to grant protective relief according to the terms of the [Indiana Civil Protection Order Act (CPOA)]." *A.N. v. K.G.*, 10

---

[6] A party must initiate an appeal within thirty days after the entry of a final judgment. Ind. Appellate Rule 9(A)(1).

N.E.3d 1270, 1271 (Ind. Ct. App. 2014). "To obtain an order of protection under the [CPOA], the petitioner must establish by a preponderance of the evidence at least one of the allegations in the petition." *A.S. v. T.H.*, 920 N.E.2d 803, 806 (Ind. Ct. App. 2010). In assessing the sufficiency of the evidence, we neither reweigh the evidence nor judge witness credibility. *Id.* We consider only the evidence of probative value and reasonable inferences that support the judgment. *Id.*

[16] We also note that the trial court terminated the protective order after a hearing, effectively denying H.F.'s petition. H.F. is therefore appealing from a negative judgment. When the appeal is from a negative judgment, we will reverse only if we are convinced that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the trial court. *Flash v. Holtsclaw*, 789 N.E.2d 955, 959 (Ind. Ct. App. 2003), *trans. denied*.

[17] In her petition, H.F. alleged that she was a victim of stalking. For purposes of the CPOA, stalking is defined as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Ind. Code § 35-45-10-1.4. "Harassment" in turn is defined as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." I.C. § 35-45-10-2.

[18] During the December 15 hearing, H.F. presented evidence relating to three separate incidents she claims amount to stalking. The first incident involved text messages sent to H.F. by M.M. in which H.F. claimed M.M. called her "all kind of names" and threatened her. *Transcript* at 73. The actual content of these text messages between H.F. and M.M. was not provided. H.F. also alleged that in May 2013 and again in May 2015, M.M. placed a letter addressed to her in the mailbox at her home. The letters were not signed and no one saw who placed the letters in the mailbox; thus, H.F. could only surmise that M.M. was the author and that M.M. placed the letters in her mailbox. Further, although the content of the letters H.F. received is tasteless, vulgar, and entirely contemptuous, and undoubtedly had an impact on H.F., it is not necessarily threatening. Further, we reject H.F.'s argument that the trial court, by asking H.F. questions relating to physical interactions between her and M.M., considered such to be a required element of stalking.

[19] The court concluded that this evidence did not sufficiently establish stalking so as to support the issuance of a protective order. We will not second-guess the trial court in this regard. The evidence showed that two years passed between receipt of the two letters and that H.F. received some possibly derogatory text messages. This does not establish a course of conduct involving repeated or continuing harassment such that the CPOA is triggered to provide a remedy. *Compare Tisdial v. Young*, 925 N.E.2d 783, 786 (Ind. Ct. App. 2010) (finding insufficient evidence of stalking to support issuance of a protective order and also noting that the General Assembly did not intend protective orders under

the CPOA to serve as a remedy for a situation involving two incidents of fighting between two unrelated individuals) *with A.S. v. T.H.*, 920 N.E.2d 803, 805-7 (Ind. Ct. App. 2010) (finding sufficient evidence of stalking to support issuance of a protective order where ex-girlfriend engaged in physical violence, yelled obscenities while repeatedly driving past petitioner's house, returned an item of clothing that had been destroyed by writing obscenities on it, and by calling petitioner's residence eight times in six minutes and indicating she would not stop, all of which occurred within a month's time). Having considered the entire record, we cannot say that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the trial court. The trial court, therefore, did not abuse its discretion in terminating the protective order upon concluding that H.F. did not sufficiently establish that she was a victim of stalking.

[20] Judgment affirmed.

Bailey, J. and Bradford, J., concur.