## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 29 2017, 9:09 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Benjamin D. Ice
William A. Ramsey
Barrett McNagny LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Christopher Bandemer
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: The Paternity of S.R.W., M.R.B.,

*Appellant-Petitioner,*

v.

B.T.T.,

*Appellee-Respondent.*

September 29, 2017

Court of Appeals Case No.
02A05-1701-JP-144

Appeal from the Allen Superior Court

The Honorable Daniel G. Pappas, Special Judge

Trial Court Cause No.
02D07-0102-JP-87

**Bailey, Judge.**

# Case Summary

[1] M.R.B. ("Mother") appeals from the trial court's order imposing contempt sanctions of a thirty-day executed sentence and two suspended sentences.

[2] We affirm in part, vacate in part, and remand with instructions.

# Issues

[3] Mother raises the following consolidated and restated issues:

> I.   Whether a pending appeal precluded the trial court from imposing contempt sanctions; and
>
> II.  Whether the imposed sanctions were improper.

# Facts and Procedural History

[4] Mother and B.T.T. ("Father") have never been married, and are the parents of S.R.W. ("Child"), who was born on January 16, 2001. Child is a competitive gymnast and spends considerable time training, with ambitions to compete at the collegiate level. Child primarily lives with Mother in Angola, and attends high school in Fort Wayne. Father lives in Minnesota. Mother and Father have joint legal and physical custody, with Father exercising parenting time according to the distance-based guidelines.

[5] The docket reflects that, over the years, Mother and Father have had several disagreements concerning Child. This appeal involves a series of contempt

findings, the first of which stemmed from contempt allegations that Mother and Father made against one another in 2013 and early 2014. The allegations concerned compliance with an August 13, 2013 order that addressed custody, parenting time, and support.[1] Following a hearing on the contempt allegations, the trial court entered an order on March 14, 2014. The trial court found that Father was not in contempt but that Mother was in contempt. Specifically, the trial court determined that Mother had contemptuously "failed to cause [Child] to be transported to Father over Christmas break"[2] and had "repeatedly threaten[ed] to interfere with and deny Father his parenting time." Appellant's App. Vol. II at 54. The trial court also found that Mother had contemptuously "threaten[ed] [Father's] employment" and made certain improper communications to Father. Appellant's App. Vol. II at 55. As a sanction, the trial court imposed a sixty-day sentence of imprisonment, suspended on the condition that Mother comply with the contempt order and all prior orders.

[6]     In June 2015, the summer before Child entered her sophomore year of high school, Father made additional contempt allegations against Mother in a petition for rule to show cause. After a hearing, the trial court issued an order

---

[1] The order is not included in either party's appendix.

[2] The trial court noted that evidently Mother had an airline voucher to pay for a portion of Child's travel expenses, but the voucher was expired and so she never paid to transport Child. It is unclear from the appellate record whether the parents considered alternative travel or payment arrangements, nonetheless it is clear that Father had no parenting time over the break.

finding Mother in contempt of both the August 2013 order and the March 2014 contempt order for actions relating to visitation and Child's educational plan.

[7]     As to visitation, the trial court determined that Mother had failed to ensure that Father could exercise his summer parenting-time rights "by interfering with the child-parent relationship between [Child] and Father" and by failing to seek the trial court's approval to alter Father's summer parenting time. Appellant's App. Vol. II at 67. The events leading up to Father's petition included Child's refusal to board an airplane to Minnesota. Child later testified as to why she did not go to her summer parenting time: "I didn't want to; it wouldn't give me the hours I need for gymnastics." Appellant's App. Vol. II at 67. Mother claimed that Child was stubborn, and that she called the police to have Child told to go visit Father. The trial court determined that "Mother is instilling or has instilled in [Child] an attitude and belief that [Child's] gymnastic and academic aspirations take precedence over Father's parental rights." Appellant's App. Vol. II at 67.

[8]     As to educational matters, the trial court concluded that Mother had "altered [Child's] educational plan without the approval of Father" and without first obtaining a court order approving the alteration. Appellant's App. Vol. II at 68. Specifically, Mother had enrolled Child in a college math class, and Father objected to Child's enrollment. The trial court noted that faculty at Child's high

school did not fully endorse the enrollment decision because Child's other math grades were not good enough to take the same course at the school.[3]

[9] In making these new contempt findings, the trial court acknowledged that it had previously suspended a sixty-day sentence for contempt, and set the matter for further hearing on sanctions. In the interim, on July 20, 2016—prior to Child's junior year of high school—Father sought to enjoin Mother from altering Child's education plan, alleging that Mother enrolled Child in classes at a different college. The trial court granted the injunction on August 26, 2016, determining "that it is not in [Child's] best interest to attend college[-]level classes at this time." Appellant's App. Vol. II at 85. Father did not seek a contempt finding, although the trial court noted that Mother's actions exhibited a "disdain" for the court's authority and that the record "clearly demonstrates that regardless" of the court's orders, "Mother will . . . contemptuously" disregard them. Appellant's App. Vol. II at 85.

[10] Mother timely appealed the injunction, filing a Notice of Appeal in September 2016, and the clerk filed the record on October 27, 2016. While the appeal was pending, Mother sought to postpone the hearing on sanctions. The trial court declined to postpone the hearing, which was held on December 19, 2016.

---

[3] The record indicates that certain colleges have requirements concerning quantities of math credits, and that Child also needs to take two Dual Credit or Advanced Placement courses to obtain an Honors Diploma.

[11] At the hearing on sanctions, the trial court orally imposed a thirty-day sentence for the March 2014 contempt finding. For each of the newer contempt findings, the trial court imposed thirty-day sentences, suspended on the condition that Mother comply with its orders. The trial court also ordered Mother to pay $5,000.00 of Father's attorney fees. Mother was immediately taken into custody, at which time Mother stated that she was currently breastfeeding her eight-month-old infant. Counsel for Mother made an oral motion to reconsider, which was denied.[4]

[12] The following day, the trial court held a telephonic conference. Counsel for the parties represented that an agreement was reached that would "serve in lieu of the order for sanctions" that the trial court had issued. Appellee's App. Vol. II at 5. The agreement was contingent upon Mother's release from incarceration as soon as was administratively possible. Another term of the agreement was that Mother not be purged of contempt upon her release, and that a sixty-day sentence would remain in place, suspended on the condition that Mother comply with the trial court's orders. The trial court asked the parties to reduce the agreement to writing. The trial court then ordered Mother's release, and stated in its written order that Mother had not been purged of contempt.

[13] On January 12, 2017, this Court dismissed Mother's first appeal for her failure to timely file a brief. Mother filed her instant Notice of Appeal on January 17,

---

[4] The hearing transcript includes no discussion concerning physical custody of Child during the immediately imposed period of incarceration. There was also no inquiry regarding arrangements for Mother's infant.

2017. The next day, Father filed a motion to reinstate Mother's sentence, and the trial court deferred ruling on the motion until the disposition of this appeal.

# Discussion and Decision

## Effect of the Pending Appeal

[14] Mother first contends that the trial court erred by imposing sanctions during the pendency of her prior appeal.[5] Pursuant to Indiana Appellate Rule 8, the "Court on Appeal acquires jurisdiction on the date the Notice of Completion of Clerk's Record is noted in the Chronological Case Summary." While an appeal is pending, the trial court "'is not permitted to intermeddle with the [subject matter] of the appeal.'" *Bradley v. State*, 649 N.E.2d 100, 106 (Ind. 1995) (quoting *State ex rel. Fairchild v. Criminal Court of Marion Cty., Div. 1*, 230 Ind. 307, 103 N.E.2d 352 (1952)). However, a trial court may "'preside over matters which are independent of and do not interfere with the subject matter of the appeal.'" *Crider v. Crider*, 15 N.E.3d 1042, 1064-65 (Ind. Ct. App. 2014)

---

[5] Mother frames the issue as one of jurisdiction, however Mother makes no allegation that the trial court lacked personal or subject-matter jurisdiction. *See K.S. v. State*, 849 N.E.2d 538, 542 (Ind. 2006) ("*Real* jurisdictional problems would be, say, a juvenile delinquency adjudication entered in a small claims court, or a judgment rendered without any service of process. Thus, characterizing other sorts of procedural defects as 'jurisdictional' misapprehends the concepts."). Mother's claim is therefore best framed as one of procedural error. *See id.; State v. Larkin*, 77 N.E.3d 237, 260 (Ind. Ct. App. 2017) (Barnes, J., dissenting) (observing that "a trial court's actions while an appeal is pending may not raise a 'jurisdictional' problem and such actions may not be 'void'" but instead "at least 'voidable' based on clear procedural error.") Mother preserved her claim of error by moving to postpone the hearing. *See K.S.*, 849 N.E.2d at 542 (observing that a claim of procedural error was untimely where the appellant "did not object during the[] proceedings" and the appellant's later collateral attack, though "characterized as jurisdictional," was ultimately not jurisdictional in nature).

(quoting *Clark v. State*, 727 N.E.2d 18, 21 (Ind. Ct. App. 2000), *trans. denied*), *trans. denied*.

[15] Mother argues that the trial court was precluded from imposing sanctions because the events leading to sanctions and the matter on appeal "related to the same general subjects." Appellant's Br. at 31. However, even if we were to conclude that, under these facts, the subject matter was sufficiently related to warrant postponing the hearing on sanctions, any error would be harmless because Mother did not pursue the initial appeal, which led to its dismissal. *See* Ind. Trial Rule 61 (providing that courts are to "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties"). Thus, Mother has not directed us to reversible error in this respect.[6]

## Contempt Sanctions

[16] As an initial matter, Father argues for dismissal of the portion of Mother's appeal pertaining to the two suspended sentences, contending that there is no final appealable order with respect to these sanctions.

---

[6] The parties also dispute whether Mother is precluded from pursuing the instant appeal because of the agreement that was telephonically communicated to the trial court. Father contends that the trial court entered a non-appealable agreed judgment when it released Mother from incarceration, which was a condition of the agreement. We note, however, that the trial court indicated that its order stood and would not be modified until it received a written agreement from the parties. Appellee's App. Vol. II at 11 ("You're going to get the order from me from yesterday and then of course we'll do what we need to do to change that as soon as we get your craftsmanship put in writing and submitted to the Court."). We conclude that the effect of the order releasing Mother from incarceration was to facilitate negotiations, not to lock the parties into the orally expressed terms and preclude the appeal of Mother's sentences. Appellee's App. Vol. II. at 8 ("I understand you may submit something to me that is a little bit different from what you've stated here. And what I mean by that is maybe you'll fine[-]tune some of those things.").

[17] An appeal of indirect contempt may be pursued "in the same manner as in cases of direct contempt," Ind. Code § 34-47-3-6(d), and there are several routes to pursue an appeal in such cases. *See* I.C. § 34-47-2-5. One route is to appeal after making a motion to reconsider, where the motion was made "either before or after . . . undergoing the imprisonment." I.C. §§ 34-47-2-5(b), -5(f). Here, Mother moved to reconsider immediately after the trial court ordered imprisonment and imposed two other suspended sanctions. Moreover, nothing in the statute prohibits an appeal from a suspended sanction, and the Indiana Supreme Court long ago held that "a judgment that is suspended is still a final judgment . . . and is not a mere interlocutory order." *Sutton v. State*, 194 Ind. 479, 143 N.E. 353 (1924). Indeed, in resolving *Sutton*, our supreme court expressly overruled contrary aspects of *Montgomery v. State*, 182 Ind. 276, 106 N.E. 370 (1914), which was an indirect contempt case involving the imposition of a suspended sentence that was deemed not to constitute a final judgment.

[18] In contending that Mother does not appeal from a final judgment, Father directs us to *Azhar v. State*, 712 N.E.2d 1018 (Ind. Ct. App. 1999), in which this Court stated that "where [the] $25.00 fine for contempt was suspended . . . there was no final judgment, and therefore no basis for an appeal." *Id.* at 1020. However, the brief discussion of suspended sanctions in *Azhar* amounts to dicta. Rather, in light of the contempt statute and *Sutton*, we see no reason why Mother cannot challenge the imposed sanctions.

[19] We review the imposition of contempt sanctions for an abuse of discretion. *Witt v. Jay Petroleum, Inc.*, 964 N.E.2d 198, 204 (Ind. 2012). An abuse of

discretion occurs "when the trial court's decision is against the logic and effect of the facts and circumstances before it." *Mitchell v. Mitchell*, 785 N.E.2d 1194, 1198 (Ind. Ct. App. 2003). Moreover, in reviewing a contempt order, we neither reweigh the evidence nor judge the credibility of witnesses. *Id.*

[20] The power of contempt is an inherent judicial power that is "not the creature of legislation and is inalienable and indestructible." *State ex rel. Trotcky v. Hutchinson*, 224 Ind. 443, 68 N.E.2d 649, 650 (1946). "Indeed, '[t]o deny a court the power to enforce obedience to its lawful orders against parties who have been subjected properly to its jurisdiction in the first instance, is to nullify its effectiveness as an independent branch of government.'" *Crowl v. Berryhill*, 678 N.E.2d 828, 831 (Ind. Ct. App. 1997) (quoting *State ex rel. Brubaker v. Pritchard*, 236 Ind. 222, 138 N.E.2d 233, 235 (1956)).

[21] It follows that the legislature cannot extinguish this inherent judicial power. Yet, the power has limits. For example, the power of contempt is limited by a contemnor's constitutional rights. *See, e.g.*, *Matter of Craig*, 571 N.E.2d 1326, 1328-29 (Ind. Ct. App. 1991) (determining that a revised contempt sanction offended principles of due process). Further, Indiana courts have identified the bounds of our inherent power. Indeed, with respect to the inherent civil contempt power—at issue in this case—we have determined that the power is "coercive and remedial in nature." *Meyer v. Wolvos*, 707 N.E.2d 1029, 1031 (Ind. Ct. App. 1999), *trans. denied*. In other words, when a court exercises its civil contempt power—as opposed to its criminal contempt power—the power is not to be used in a primarily punitive fashion, but instead to "coerce action

for the benefit of the aggrieved party."[7] *In re Paternity of M.P.M.W.*, 908 N.E.2d 1205, 1209 (Ind. Ct. App. 2009); *see also Moore v. Ferguson*, 680 N.E.2d 862, 866 (Ind. Ct. App. 1997) (recognizing that a civil contempt sanction may have "incidental punitive aspects" but will be upheld as a proper sanction if "it is designed to coerce . . . compliance" with an order), *trans. denied*.

[22] When a court exercises its inherent civil contempt power and fashions a coercive contempt sanction, we have typically required that there be an opportunity for the contemnor to purge herself of contempt. *See generally Moore*, 680 N.E.2d at 865-66. For example, where the trial court imposes a sanction of incarceration, the incarceration order may be "conditioned on the payment of money or the accomplishment of a single task." *M.P.M.W.*, 908 N.E.2d at 1210. In this sense, it can be said that, because of the purge condition, the contemnor always carries the "keys to the jail" in her pocket. *See generally Duemling v. Fort Wayne Cmty. Concerts, Inc.*, 243 Ind. 521, 188 N.E.2d 274, 277 (1963); *Moore*, 680 N.E.2d at 865. *See also D.W. v. State*, 673 N.E.2d 509, 512 (Ind. Ct. App. 1996) ("'If the judgment seeks to coerce the [contemnor] into doing an affirmative act by confinement in jail, it must provide that the imprisonment cease as soon as the act is done.'") (quoting *State ex rel. McMinn v. Gentry*, 229 Ind. 615, 100 N.E.2d 676, 678 (1951)), *trans. denied*.

---

[7] In contrast, a criminal contempt sanction is "punitive in nature because its purpose is to vindicate the authority of the court . . . benefit[ting] the State rather than the aggrieved party." *Jones v. State*, 847 N.E.2d 190, 199 (Ind. Ct. App. 2006), *trans. denied*.

[23] Mother challenges the order requiring her to serve the sentence that was previously suspended, contending that the incarceration order was improper because it lacked a "purge condition." Thus, Mother essentially asserts that a "purge condition" is a necessary element of every incarceration order.

[24] We do not think that the ability to avoid incarceration is necessary for a contempt sentence to be permissible. Rather, the ability to avoid incarceration is what typically renders a sentence *coercive*. In the prototypical contempt case, the court seeks to coerce the contemnor into completing a single, definitive act, *e.g.*, the payment of money. In such cases, the "purge condition" safeguards against arbitrary, punitive periods of incarceration imposed well after the contemnor would have complied. Thus, the ability to avoid the incarceration is what renders the incarceration order coercive, tying the length of the incarceration to the length actually necessary to coerce action.

[25] Yet, this is not the prototypical contempt case. Rather, here, Mother was obligated to continually conform her behavior to comply with court orders concerning Child, and the traditional "purge condition" does not map well onto such matters of ongoing compliance. Indeed, it is difficult to imagine an incarceration order that would allow for immediate release while also retaining the intended coercive effect.

[26] We must be mindful that the court has the inherent power to coerce compliance with its orders. *See Trotcky*, 68 N.E.2d at 650. We accordingly decline to limit the civil contempt power with a bright-line requirement, and instead conclude

that an incarceration order need not contain a "purge condition," so long as the order is primarily coercive. *See Williamson v. Creamer*, 722 N.E.2d 863, 867 (Ind. Ct. App. 2000) (upholding a thirty-two-day sentence imposed against a parent, concluding that the sentence "serv[ed] the coercive purpose of maintaining . . . compliance with the court's visitation order in the future for the benefit" of the other parent); *see also Flash v. Holtsclaw*, 789 N.E.2d 955, 959 (Ind. Ct. App. 2003) (approving of a sixty-day sentence for indirect civil contempt where the contemnor had repeatedly violated a protective order). *But see M.P.M.W.*, 908 N.E.2d at 1210 (distinguishing between a proper "contempt sanction conditioned on the payment of money or the accomplishment of a single task" and an improper sanction that "cannot be purged"); *K.L.N. v. State*, 881 N.E.2d 39, 42 (Ind. Ct. App. 2008) ("A contempt order that does not offer an opportunity for the recalcitrant party to purge himself of the contempt may not be imposed in a civil contempt proceeding."); *Thompson v. Thompson*, 811 N.E.2d 888, 906 (Ind. Ct. App. 2004) (concluding that a jail sentence was improperly imposed for indirect civil contempt where "the trial court did not condition [the contemnor's] jail sentence upon . . . compliance with its orders"), *trans. denied*.

[27] Of course, in the prototypical contempt case—which this is not—the "purge condition" is what renders the incarceration order coercive. Here, however, the incarceration order does not automatically fail because there is no purge condition. Nonetheless, the order may fail for imposing a punitive sanction: more jail time than reasonably necessary to garner Mother's compliance.

Here, the trial court first issued a "wake-up call" by way of suspended jail time in March 2014, after which Mother apparently complied for more than a year. Subsequently, Mother was found to have willfully disobeyed a parenting-time order by de-valuing parenting time with Father and failing to ensure that Child boarded an airplane to Minnesota when Child—a teenager—refused; it is undisputed that Mother called the police for assistance in forcing Child to visit Father. The trial court also determined that Mother violated a court order by unilaterally enrolling Child in a college-level math class.[8] Moreover, at the time the trial court ordered the incarceration, it was aware that Mother had again enrolled Child in college coursework and that there was a parenting-time dispute concerning visitation with Father over winter break.

The facts and circumstances of this case do not support the reasonable conclusion that a full thirty days of incarceration would have a primarily coercive effect on Mother—especially not when imposed one week before Christmas, while Mother was nursing an infant. *Cf. Flash*, 789 N.E.2d at 959 (upholding the imposition of sixty days of incarceration following repeated violations of a protective order, where the contemnor had harassed the aggrieved party by calling her, monitoring her activities, and disseminating information about her via the Internet, mail, and telephone), *trans. denied*. Thus, we conclude that the sanction imposed was punitive. Although a trial

---

[8] Mother does not challenge whether these actions were contemptuous and appears to concede as much. We accordingly treat all of the contempt findings as substantiated, although we reserve doubt about whether Mother willfully disobeyed any order of the trial court when Child refused to board the airplane.

court may impose a punitive contempt sanction, it may do so only in criminal contempt proceedings, which involve a variety of additional procedural safeguards that were not present here. *See, e.g.*, *Hancz v. City of South Bend*, 691 N.E.2d 1322, 1325 n.3 (Ind. Ct. App. 1998) ("A charge of criminal contempt should be prosecuted by the State against the defendant, in an independent action, and should charge that the acts have been done or omitted to be done with the intent to defy the authority of the court."). We must therefore vacate the punitive incarceration order.[9] *See K.L.N.*, 881 N.E.2d at 44 ("Given that K.L.N. was found to be in *civil* contempt of court, a criminal, punitive sanction is unlawful.").

[30]     With respect to the two suspended sentences, Mother argues that the sentences are impermissible because they are "conditioned upon broad and undefined future conduct," that is, "Mother's ongoing compliance with all court orders." Appellant's Br. at 25. However, "[p]enalties designed to compel future compliance with a court order are considered to be coercive and avoidable through obedience." *Norris v. Pethe*, 833 N.E.2d 1024, 1031-32 (Ind. Ct. App. 2005); *see also Duemling*, 188 N.E.2d at 277 (upholding a suspended sentence, observing that the sentence was avoidable through future compliance). A suspended contempt sanction—while suspended—amounts to a wholly coercive "comply or else" warning that subjects the contemnor to no palpable

---

[9] The trial court's imposition of a punitive sentence—that Mother was to immediately begin serving—strikes us as bordering on intemperate. It was, at the very least, ill-considered.

loss of liberty or property. Thus, the authority to fashion a suspended sentence falls squarely within the trial court's inherent coercive and remedial civil contempt power. We therefore affirm the imposition of the suspended sanctions, while passing no judgment on the length of those sentences. Rather, we remind the trial court that any future order of incarceration must be reasonably necessary to garner compliance, as determined at the time the incarceration is imposed.[10]

[31] Finally, Mother points out that the order imposing suspended sentences improperly "presume[s] that any failure to comply with a future order will not only be willful but also will warrant time in jail." Appellant's Br. at 27. The order states that Mother's confinement is "suspended on the condition that she strictly comply with the parenting[-]time orders of the Court," and that she may be purged of her confinement orders "by her strict compliance with the parenting[-]time orders." Appellant's App. Vol. II at 133. We agree that the language requiring strict compliance was over-inclusive, in that prohibiting unwillful actions has no logical coercive effect. Therefore, on remand, we

---

[10] We also remind the trial court that before imposing any sanction for civil contempt—but particularly when the sanction is jail time, *Reynolds v. Reynolds*, 64 N.E.3d 829, 835 (Ind. 2016)—it "shall, on proper showing," postpone a show-cause hearing "to give the defendant a *reasonable and just* opportunity to be purged of the contempt." I.C. § 34-47-3-5(c) (emphasis added). A determination of what is "reasonable and just" necessitates consideration of not only what must be done to comply with the letter of the order but also of the contemnor's willingness and ability to conform with the order. Here, Mother was found in contempt in part for failing to ensure that Father received parenting time. Yet, it was Child who refused to board a plane. Mother cannot be expected to physically pick up her nearly grown child—who is a "child" at this point only because the law declares her so—and force her onto a plane. Instead, Mother called the police to try to facilitate the visit. In this case, it may not be "reasonable and just" to require Mother to make Child actually visit Father to avoid a contempt finding.

instruct the trial court to revise its order, striking the modifiers "strict" and "strictly" and conditioning execution of Mother's suspended sentences only upon willful non-compliance with its orders.

# Conclusion

[32] The trial court abused its discretion in imposing a punitive contempt sanction, and we therefore vacate the order of incarceration. Moreover, although the imposition of suspended sentences was a proper coercive sanction, the trial court abused its discretion in conditioning execution of the sentences on strict compliance with its parenting-time orders. We instruct the trial court to revise its order, instead conditioning the sentence upon willful non-compliance.

[33] Affirmed in part, vacated in part, and remanded with instructions.

Robb, J., concurs.
Vaidik, C.J., concurs in result without opinion.